Indira J. Cameron-Banks (CBN 248634)
**CAMERON BANKS LAW**, A PROF. CORP.
407 N. Maple Dr., Grnd. Fl.
Beverly Hills. CA 90210
424.757.0585 | indira@cameronbanks.law

Attorney for Plaintiff,
CLIFFORD J. HARRIS, JR.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD J. HARRIS, Jr.,<br>an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>SABRINA D. PETERSON,<br>an individual,<br><br>        Defendant. | Case No. 2:24-cv-10781<br><br>**COMPLAINT FOR DAMAGES**<br><br>**First Cause of Action**<br>Defamation- Libel *Per Se*<br><br>**Second Cause of Action**<br>Defamation- Libel *Per Quod*<br><br>**Third Cause of Action**<br>Invasion of Privacy- False Light<br><br>**Fourth Cause of Action**<br>Invasion of Privacy- Misappropriation<br>of Name or Likeness<br><br><br>**<u>Demand for Jury Trial</u>** |

COMES NOW Plaintiff CLIFFORD J. HARRIS, Jr. ("HARRIS" or "Plaintiff") who brings this Complaint for Damages and Demand for Jury Trial, rested upon this Court's diversity jurisdiction, against Defendant SABRINA D. PETERSON, an individual ("PETERSON" or "Defendant"), alleging, based upon information and belief, the following with respect to Defendant's conduct:

## I.

## NATURE OF THE CASE

1.    HARRIS, a/k/a *T.I.*, a/k/a *Tip*, has been a celebrated entertainer for the last thirty years, widely known throughout the world as a pioneer in hip-hop music as a rapper, songwriter, and producer, as well as an actor, entertainment industry executive, and author. His popularity, global fan base, and the widespread interest in his life, has made HARRIS a frequent subject for news and pop culture media outlets to cover.

2.    PETERSON is a self-promoting social media influencer who markets herself under the account name, or handle, of *@theglamuniversity,* as a business coach and entrepreneur on social media platforms, primarily Instagram, where she is followed by approximately 250k+ other accounts.

3.    Over a decade ago, PETERSON had a personal friendship with HARRIS's wife, Tameka Harris, a/k/a *Tiny* ("Mrs. Harris"), also a celebrated, award-winning singer-songwriter.  However, HARRIS, along with his wife, ended the friendship because PETERSON's dark, toxic, and negative character was neither a healthy nor positive energy, or influence, on or around his family.

4.    Ever since HARRIS and his family spurned Peterson, she has been obsessed with HARRIS and his wife.  She spent years desperately seeking her way into their good graces.  Unsuccessful, Peterson turned to her usual pattern of online harassment and threatening behavior, that, throughout the years, she has unleashed on several other individuals who similarly sought to no longer associate with her.

COMPLAINT FOR DAMAGES | DEMAND FOR JURY TRIAL

5.      However, unlike PETERSON's other victims who were not well-known celebrities, attacking HARRIS and his family has brought PETERSON the online popularity, or clout, she has been seeking as an online social media influencer.

6.      As a social media influencer, PETERSON's livelihood depends on her visibility and popularity, or clout, on various social media platforms.  One of PETERSON's successful methods of securing such clout has been through leveraging the interest that fans, media, and others have in HARRIS, in order to steer attention towards herself, and her social media accounts.  Specifically mentioning HARRIS on various online platforms in close association with herself brings viewership to, and engagement with, PETERSON's social media posts.  As such, she intentionally and/or recklessly posts false, salacious information, and baseless accusations, about him in order to stay relevant in online social media, and gain clout on popular social media platforms including Instagram, Facebook, and YouTube.

7.      Most of PETERSON's social media posts about HARRIS, and his family, have crossed the line of decency, are defamatory, and are intended to harass him and his family.  A series of posts on Instagram on September 17, 2024, were particularly beyond the pale when she falsely stated that HARRIS was under federal investigation for sexual trafficking of women in connection with another celebrity entertainer currently being prosecuted for such conduct.  PETERSON published these statements about HARRIS knowing they were false, and defamatory, in order to advance her own personal interests.

8.      This lawsuit is intended to redress the harm caused to HARRIS as a result of these false, defamatory statements that were published by PETERSON simply to advance her popularity in online social media.

### III.

### PARTIES

9.      Plaintiff HARRIS is an individual who is, and always has been, a resident of, and domiciled in, the State of Georgia, with the intention of permanently residing within that state.

10.     Plaintiff is informed and believes, and on that basis alleges, that Defendant PETERSON is a resident of Los Angeles, California, within Los Angeles County, which is situated within this judicial district, and was so at all times material to the allegations of this Complaint.

### III.

### JURISDICTION AND VENUE

11.     The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of the parties.  Plaintiff HARRIS is domiciled in the State of Georgia.  Defendant PETERSON is domiciled in the State of California.

12.     Venue is appropriate in the Central District of California pursuant to 28 U.S.C. § 1391(b)(3) as PETERSON resides in Los Angeles County and engaged in the offensive conduct at issue in this Complaint while within this judicial district.

### IV.

### FACTUAL ALLEGATIONS AS TO ALL CAUSES OF ACTION

**PETERSON has a well-established history of deceitful, fraudulent and criminal conduct, as well as threatening, assaultive and violent (criminal) conduct.**

13.     PETERSON is a convicted federal felon sentenced for lying to federal agents and officers by making materially false, fictitious, or fraudulent statements and/or representations to them in violation of 18 U.S.C. § 1001.  PETERSON's federal probationary sentence was revoked, and she was sentenced to 12 months in

federal prison after multiple violations of the terms of her probation, including an aggravated assault conviction for launching a violent attack on another woman. In that aggravated assault, PETERSON, while holding her minor child, physically slashed the victim multiple times using a razor blade hidden in PETERSON's mouth.

14.     This violent attack that caused PETERSON's federal probation to be revoked, and PETERSON to be placed in prison, was one of no less than ten instances of violent, assaultive, threatening, and/or harassing conduct, for which PETERSON has faced legally criminal consequences in different states. This conduct includes multiple instances of domestic violence, stalking, harassment, threats, battery, aggravated assault, assault, (criminal) destruction of property, and the issuance of protective/restraining orders against her.

15.     Multiple individuals have successfully sought legal and law enforcement intervention and protection from PETERSON's stalking, harassing, and threatening conduct both online -- through social media -- and in person. PETERSON has faced several criminal interventions for her harassing, threatening and/or violent conduct, that includes, but is not limited to the following:

- posting a victim's image and personal information on online social media platforms, and on billboards, falsely stating that the individual was spreading HIV, a sexually transmitted virus, to individuals;

- posting a victim's residential address on online social media platforms, alongside false information that the victim was giving away personal property for free, and encouraging strangers to go to the residence and harass the victim;

- sending explicit photographs, videos, and threatening messages to a victim at the victim's workplace;

- posting false allegations about a victim on online social media platforms

after that individual ended a romantic relationship with her;

- posting slanderous material about a victim who was a former co-worker on online social media platforms, threatening, and harassing the individual in their new place of work;

- following a victim, another former co-worker, to her residence, and threatening to shoot the victim with what appeared to be a weapon;

- entering a high school, physically assaulting an educator in the institution, and threatening to violently harm, and disfigure a high school student;

- vandalizing a victim's residence after a neighborhood dispute with the neighbor;

- pushing, striking, and kicking a yet another former co-worker;

- violently attacking the victims who were the owner and customers in a neighboring business; and

- violent physical altercations with various victims.

*Purported Mugshot For Sabrina Peterson From 2013[1]*



« Back to gallery
« Previous | Next »

*In Mugshot Mania: Former Owner of Atlanta's Glam Bar Salon Heads to The Clink...*

---

[1] Straight from the A, Sabrina Peterson Mugshot 2013, *https://straightfromthea.com/2013/04/16/sabrina-peterson-arrest-mugshot-glam-bar-salon/sabrina-robertson-mugshot-2013/* (Last visited December 12, 2024)

COMPLAINT FOR DAMAGES | DEMAND FOR JURY TRIAL

16.     Not only is PETERSON a federal felon who was convicted for lying to federal officers, she has a documented history of spreading false information about people on social media in order to harass them, and routinely engages in deceitful, fraudulent, false, or misleading conduct for profit, utilizing her various social media and other online platforms, including, but not limited to, Instagram through the account name, or "handle" @*theglamuniversity.*

17.     PETERSON markets herself as a "cannabis entrepreneur" even though neither she nor her company, Pretty High Co., LLC has any license to sell cannabis products in California, or any state in which she distributes such products.

18.     Additionally, PETERSON advertises and promotes the sale and purchase of illegally imported counterfeit luxury items from Turkey – even posting images of her minor child on social media to promote the purchase of such counterfeit goods.

*Instagram Post by @TheGlamUniversity (PETERSON) of her Minor Son*



COMPLAINT FOR DAMAGES | DEMAND FOR JURY TRIAL

19.    PETERSON also promotes her business coaching services, purportedly charging clients thousands of dollars for each session although she has no discernible basis for providing such coaching, no legitimate businesses, and a long list of creditors, including HARRIS, to whom she owes approximately $100,000.

### PETERSON has a well-established history of deceitful and harassing conduct toward HARRIS

20.    HARRIS, *a/k/a T.I., a/k/a Tip*, has been a celebrated entertainer for the last thirty years, widely known throughout the world as a pioneer in hip-hop music as a rapper, songwriter, and producer, as well as an actor, entertainment industry executive, and author.  At all times material herein, HARRIS has been married to Tameka Harris, a/k/a "*Tiny*" ("Mrs. Harris"), a celebrity singer-songwriter and entertainer.

21.    Prior to 2007, PETERSON was close personal friends with Mrs. Harris, but their relationship ended, in part, because HARRIS did not want PETERSON's dark, toxic energy and character around his wife or their family.  In fact, PETERSON readily publicized the fact that she at one point violently attacked HARRIS's assistant.

22.    However, PETERSON was, and to this day is, a "clout-chaser," or an individual who seeks notoriety, particularly on social media platforms, based on her proximity to celebrities.  She has maintained a bizarre, unhealthy, and unhinged obsession with HARRIS, his wife, and their family.

23.    As such, PETERSON remained relentless about insinuating herself into HARRIS's family life.  For example, she would show up unannounced, and uninvited to the hospital when HARRIS's family members were seeking healthcare treatment.  She would also come around the HARRIS family forcing her minor child to pose for pictures with HARRIS so that PETERSON could post them on

social media platforms, including Facebook, where PETERSON posts under her profile of "The Glam University."

*Facebook Post by @TheGlamUniversity (PETERSON) of her Minor Son with HARRIS on February 2, 2019*



24.    PETERSON was unable to accept that she was *persona non grata* to HARRIS and his family, and became obsessed with HARRIS, his wife and his family, and bizarrely fixated on their every move.

25.    For example, in or around 2020, PETERSON took statements HARRIS made in support of the Atlanta mayor personally, even though they had nothing to do with PETERSON whatsoever.  PETERSON had a bizarre belief that HARRIS's social media posts in support of the then Atlanta mayor Keisha Bottoms's views on issues, and in her re-election campaign against another candidate, Felicia Moore, were in fact veiled attacks directed at PETERSON herself.  PETERSON's strange assumption seems to be founded on the fact that she participated in protests against Bottom's policies, and happened to meet Felicia Moore at a protest.

26.    Felicia Moore acknowledged that as part of her campaign for office,

PETERSON started making accusations about HARRIS in order to specifically discredit the incumbent mayor by discrediting the celebrity that supported her – HARRIS.

27.    PETERSON, forever clout-chasing, and still obsessed with being spurned by HARRIS and his family, started to spread false, salacious allegations against HARRIS and his wife that they had sexually assaulted women.  Indeed, neither HARRIS nor his wife, Mrs. Harris, sexually assaulted anyone, but given their celebrity status, the allegations were quickly picked-up, and spread, in the media.

28.    PETERSON's false and salacious allegations brought her the attention and notoriety she desperately desired, so she continued publicizing them in reckless discard for the truth.  Indeed, her recklessness was reported on at least one occasion where PETERSON quickly publicized a completely fabricated story of assault that was sent by the author to test whether PETERSON would actually promote it, which she predictably did.

*Instagram Post by @theindustryonblast Exposing PETERSON's Reckless Posting of False Accusations Against HARRIS*



COMPLAINT FOR DAMAGES | DEMAND FOR JURY TRIAL

29.     PETERSON's willingness to fabricate and publicize false, salacious allegations against HARRIS and his wife, a celebrity couple, caught the attention of Tyrone Blackburn, an attorney who has also gained notoriety as a clout-chaser by lodging false, salacious allegations -- usually outlandish allegations of sexual assault -- against various celebrities.  As a federal judge in the Southern District of New York wrote when referring Blackburn to the Court's Grievance Committee, he is an attorney who improperly files cases "to garner media attention, embarrass defendants with salacious allegations, and pressure defendants to settle quickly."

30.     PETERSON partnered with Blackburn to specifically, and boldly, solicit women through her social media platforms -- namely Instagram and Facebook -- to lodge false allegations against HARRIS.  PETERSON, along with Blackburn, would coach women on what to say, and how to present their false narratives for a potential legal case to be brought by Blackburn.  PETERSON's active and aggressive solicitation of women through social media to serve as Blackburn's potential clients, also known as "capping" or "case-running," was wholly unsuccessful.  PETERSON and Blackburn have never launched any successful legal case -- criminal or civil – against HARRIS or his wife.

31.     PETERSON and Blackburn's aggressive solicitation did nothing more than provide PETERSON with the notoriety and media attention she so craved, at the expense of HARRIS and his reputation.

32.     Drunk with the attention she was receiving for falsely accusing HARRIS of sexual assault, PETERSON also filed a lawsuit against HARRIS, and his wife, in 2021 asserting bogus claims sounding in defamation.  However, in that lawsuit HARRIS successfully brought an anti-SLAPP motion, and PETERSON was ordered to pay HARRIS $96,000+ in attorney's fees, which to date has not been paid.

33.     Instead, PETERSON has carried on with her decades-old habit of

online harassment through public social media posts.  On or about September 17, 2024, PETERSON posted spurious accusations against HARRIS on the *@theglamuniversity* Instagram account – an account PETERSON uses to promote her purported business enterprises, as well as herself as a social media influencer. These posts, attached hereto as **Exhibit A** and **Exhibit B** (*unredacted version filed under seal*), and fully incorporated herein (collectively "September 17th Posts") were done as a "Story" and remained visible to the public, and specifically highlighted to the account's 250k+ followers, for twenty-four hours.  In them, PETERSON falsely asserts that there is a pending federal investigation focused on HARRIS related to sex trafficking in connection with another high-profile celebrity being federally prosecuted for such conduct.  She identifies HARRIS by his stage name, specifically "tagging" his Instagram account (*@tip*) over a picture of the other high-profile celebrity and words that he was arrested by federal authorities for alleged sex trafficking, asking HARRIS if he was ready to be arrested next, and a statement that the "feds are gathering facts" about HARRIS.

34.    PETERSON knew that her incendiary accusations were false, but recklessly made them via social media anyway because doing so has been PETERSON's established "go-to" methods for harassing individuals.  Moreover, specifically asserting wild salacious allegations against HARRIS has been PETERSON's "tried and true" method for gaining media attention and notoriety.

35.    As a result of PETERSON's slanderous, defamatory conduct, HARRIS has sustained harm to his reputation, business, profession, occupation, as well as emotional distress and anguish.

# IV.

# CAUSES OF ACTION FOR RELIEF

## FIRST CAUSE OF ACTION

### Defamation- Libel *Per Se*

36.    Plaintiff incorporates by reference all allegations in the foregoing paragraphs of this Complaint as though fully set forth herein with the same force and effect as if such paragraphs were set forth fully at length here.

37.    As set forth herein, Defendant intentionally published false statements about Plaintiff on her Instagram account, under the account *@theglamuniversity* to be read by the public at large, and the 250k+ followers of her account.

38.    Defendant published these false and defamatory statements to third parties with full and actual knowledge that said statements were false, or with reckless disregard for whether said statements were false.

39.    These false statements made in the September 17th Posts clearly and unequivocally communicate the falsehood that federal investigators are investigating HARRIS for sex trafficking in connection with another high-profile celebrity being prosecuted by such by stating "@tip [HARRIS] are you ready?" over the image of that high profile individual, with words identifying that individual, along with the fact that he was arrested by federal authorities for alleged sex trafficking, and stating "feds are gathering the facts. @tip [HARRIS]."

40.    Because "*@tip*" refers to HARRIS's Instagram account, third parties reading the September 17th Posts reasonably understood them to be about HARRIS specifically, and reasonably understood the statements to mean that Plaintiff is a party to a federal crime of sex trafficking alongside the prominent celebrity entertainer widely known for being federally prosecuted for such conduct.

41.     In publishing these false statements, Defendant knew that they would have a damaging impact on Plaintiff's business, trade, and professional reputation

by falsely claiming that Plaintiff was the subject, or defendant, in a federal criminal investigation and/or prosecution for sex trafficking alongside the prominent celebrity entertainer being prosecuted for such conduct.

42.    These published false statements were not mere name calling or rhetorical hyperbole, but of specific facts that are false, and thus actionable.

43.    In publishing these false statements, Defendant intentionally caused these falsehoods to be disseminated to individuals both inside and outside of Plaintiff's personal and professional circles, and made the statements in order to discredit and/or humiliate him.

44.    Defendant published these false and defamatory statements to third parties as part of Defendant's ongoing campaign to harass Plaintiff, and his family, and to garner attention and engagement on her social media accounts, and boost her clout, or her own popularity, as a social media influencer.

45.    Defendant's false statements about Plaintiff are not afforded any privileges or protections, First Amendment or otherwise.

46.    Defendant knew that publishing these false statements about Plaintiff on the internet would have a damaging impact on Plaintiff's credibility and reputation, or knew that the damaging impact on Plaintiff's credibility and reputation was substantially certain to occur.

47.    Defendant knew, or had reason to know, said statements have a natural tendency to injure or cause damages to Plaintiff, subjecting him to public contempt.

48.    Defendant knew, or had reason to know, said statements would directly injure Plaintiff's business, trade, and/or professional reputation.

49.    As a direct and proximate result of Defendant's knowing and intentional publishing of statements that Defendant knew, or should have known, were false, Plaintiff has suffered, and will likely suffer continuing harm his

business, trade and profession, reputation, all in an amount according to proof at the time of trial.

50.     As a direct and proximate result of Defendant's knowing an intentional publishing of statements that Defendant knew, or should have known, were false, Plaintiff has suffered shame, mortification, humiliation, embarrassment hurt feelings, mental and emotional distress and discomfort, all to Plaintiff's damage in an amount proven at trial.

51.     Plaintiff is informed and believes, and on that basis alleges, that the aforesaid acts directed toward Plaintiff by Defendant were carried out with a conscious disregard of Plaintiff's right to be free from such wrongful, illegal conduct, such as to constitute oppression, fraud, or malice pursuant to section 3294 of the California Civil Code, among other provisions, entitling Plaintiff to punitive damages from Defendant in an amount appropriate to punish and set an example of her.

## SECOND CAUSE OF ACTION
### Defamation – Libel *Per Quod*

52.     Plaintiff incorporates by reference all allegations in the foregoing paragraphs of this Complaint as though fully set forth herein with the same force and effect as if such paragraphs were set forth fully at length here.

53.     As set forth herein, Defendant intentionally published false statements about Plaintiff on her Instagram account, under the account *@theglamuniversity* to be read by the public at large and the 250k+ followers of her account.

54.     Defendant published these false and defamatory statements to third parties with full and actual knowledge that said statements were false, or with reckless disregard for whether said statements were false.

55.     These false statements made in the September 17th Posts clearly and unequivocally communicate the falsehood that federal investigators are

investigating HARRIS for sex trafficking in connection with another high-profile celebrity being prosecuted by such by stating "@tip [HARRIS] are you ready?" over the image of that high profile individual, with words identifying that individual, along with the fact that he was arrested by federal authorities for alleged sex trafficking, and stating "feds are gathering the facts. @tip [HARRIS]."

56.    Because "*@tip*" refers to HARRIS's Instagram account, third parties reading the September 17th Posts reasonably understood them to be about HARRIS specifically, and reasonably understood the statements to mean that Plaintiff is a party to a federal crime of sex trafficking alongside the prominent celebrity entertainer widely known for being federally prosecuted for such conduct.

57.    Defendant published false statements to the public at large, and specifically to her 250k+ followers, all of whom were likely aware of the facts and circumstances surrounding the celebrity entertainer being prosecuted for the federal crime of sex trafficking. Thus, by directly implying Plaintiff was a party to such criminal conduct, Defendant caused injury to Plaintiff in his business, trade, occupation; exposed him to hatred, contempt, ridicule and shame; and/or discouraged those in Plaintiff's personal and professional circles from associating and/or conducting business with him.

58.    In publishing these false statements, Defendant knew that they would have a damaging impact on Plaintiff's business, trade, and professional reputation by falsely claiming that Plaintiff was the subject, or defendant, in a federal criminal investigation and/or prosecution for sex trafficking alongside the prominent celebrity entertainer being prosecuted for such conduct.

59.    These published false statements were not mere name calling or rhetorical hyperbole, but of specific facts that are false, and thus actionable.

60.    In publishing these false statements, Defendant intentionally caused these falsehoods to be disseminated to individuals both inside and outside of

COMPLAINT FOR DAMAGES | DEMAND FOR JURY TRIAL

Plaintiff's personal and professional circles, and made the statements in order to discredit and/or humiliate him.

61.    Defendant published these false and defamatory statements to third parties as part of Defendant's ongoing campaign to harass Plaintiff, and his family, and to garner attention and engagement on her social media accounts, and boost her clout, or her own popularity, as a social media influencer.

62.    Defendant's false statements about Plaintiff are not afforded any privileges or protections, First Amendment or otherwise.

63.    Defendant knew that publishing these false statements about Plaintiff on the internet would have a damaging impact on Plaintiff's credibility and reputation, or knew that the damaging impact on Plaintiff's credibility and reputation was substantially certain to occur.

64.    Defendant knew, or had reason to know, said statements have a natural tendency to injure or cause damages to Plaintiff, subjecting him to public contempt.

65.    Defendant knew, or had reason to know, said statements would directly injure Plaintiff's business, trade, and/or professional reputation.

66.    As a direct and proximate result of Defendant's knowing and intentional publishing of statements that Defendant knew, or should have known, were false, Plaintiff has suffered, and will likely suffer continuing harm his business, trade and profession, reputation, all in an amount according to proof at the time of trial.

67.    As a direct and proximate result of Defendant's knowing an intentional publishing of statements that Defendant knew, or should have known, were false, Plaintiff has suffered shame, mortification, humiliation, embarrassment hurt feelings, mental and emotional distress and discomfort, all to Plaintiff's damage in an amount proven at trial.

COMPLAINT FOR DAMAGES | DEMAND FOR JURY TRIAL

68.     Plaintiff is informed and believes, and on that basis alleges, that the aforesaid acts directed toward Plaintiff by Defendant were carried out with a conscious disregard of Plaintiff's right to be free from such wrongful, illegal conduct, such as to constitute oppression, fraud, or malice pursuant to section 3294 of the California Civil Code, among other provisions, entitling Plaintiff to punitive damages from Defendant in an amount appropriate to punish and set an example of her.

## THIRD CAUSE OF ACTION

### Right of Privacy- Misappropriation of Name or Likeness

69.     Plaintiff incorporates by reference all allegations in the foregoing paragraphs of this Complaint as though fully set forth herein with the same force and effect as if such paragraphs were set forth fully at length here.

70.     Defendant markets herself as a social media influencer, purported business coach and entrepreneur on her social media platforms, including but not limited to Instagram, through the social media account named *@theglamuniversity*. As such, increased viewership and popularity with her social media accounts directly benefits Defendant's clout and overall marketability for her professional ventures.

71.     As previously set forth herein, Defendant has spent years trying to leverage Plaintiff's name, identity, and/or likeness on social media platforms for her own commercial benefit, and/or to increase the circle of her influence on such platforms.  Plaintiff has never consented to Defendant's use of his name, identity and/or likeness to market her professional ventures as a social media influencer and/or purported business coach and entrepreneur.

72.     As set forth herein, Defendant intentionally published false statements about Plaintiff on her Instagram account, under the account *@theglamuniversity* to be read by the public at large and the 250k+ followers of her account.

73.    Again, Defendant used Plaintiff's name and/or identity in the September 17th Posts on Instagram, identifying Plaintiff by his Instagram account *"@tip"* even though Plaintiff never consented to Defendant's use of his name, identity, or likeness to be used in Defendant's social media posts.

74.    The false statements made in the September 17th Posts clearly and unequivocally communicate the falsehood that federal investigators are investigating HARRIS for sex trafficking in connection with another high-profile celebrity being prosecuted by such by stating "@tip [HARRIS] are you ready?" over the image of that high profile individual, with words identifying that individual, along with the fact that he was arrested by federal authorities for alleged sex trafficking, and stating "feds are gathering the facts. @tip [HARRIS]."

75.    Because "*@tip*" refers to HARRIS's Instagram account, third parties reading the September 17th Posts reasonably understood them to be about HARRIS specifically, and reasonably understood the statements to mean that Plaintiff is a party to a federal crime of sex trafficking alongside the prominent celebrity entertainer widely known for being federally prosecuted for such conduct.

76.    Defendant published false statements to the public at large, and specifically to her 250k+ followers, all of whom were likely aware of the facts and circumstances surrounding the celebrity entertainer being prosecuted for the federal crime of sex trafficking. These statements had a damaging impact on Plaintiff's business, trade, and professional reputation by falsely claiming that Plaintiff was the subject of, or defendant in, a federal criminal investigation and/or prosecution for sex trafficking alongside the prominent celebrity entertainer being prosecuted for such conduct.

77.    Thus, by directly implying Plaintiff was a party to such criminal conduct, Defendant caused injury to Plaintiff in his business, trade, occupation; exposed him to hatred, contempt, ridicule and shame; and/or discouraged those in

Plaintiff's personal and professional circles from associating and/or conducting business with him.

78.    As a direct and proximate result of Defendant's knowing and intentional publishing of statements that Defendant knew, or should have known, were false, Plaintiff has suffered, and will likely suffer continuing harm his business, trade and profession, reputation, all in an amount according to proof at the time of trial.

79.    As a direct and proximate result of Defendant's knowing an intentional publishing of statements that Defendant knew, or should have known, were false, Plaintiff has suffered shame, mortification, humiliation, embarrassment hurt feelings, mental and emotional distress and discomfort, all to Plaintiff's damage in an amount proven at trial.

80.    Plaintiff is informed and believes, and on that basis alleges, that the aforesaid acts directed toward Plaintiff by Defendant were carried out with a conscious disregard of Plaintiff's right to be free from such wrongful, illegal conduct, such as to constitute oppression, fraud, or malice pursuant to section 3294 of the California Civil Code, among other provisions, entitling Plaintiff to punitive damages from Defendant in an amount appropriate to punish and set an example of her.

## FOURTH CAUSE OF ACTION

### Right of Privacy – False Light

81.    Plaintiff incorporates by reference all allegations in the foregoing paragraphs of this Complaint as though fully set forth herein with the same force and effect as if such paragraphs were set forth fully at length here.

82.    Defendant markets herself as a social media influencer, purported business coach and entrepreneur on her social media platforms, including but not limited to Instagram, through the social media account named *@theglamuniversity*.

COMPLAINT FOR DAMAGES | DEMAND FOR JURY TRIAL

As such, increased viewership and popularity with her social media accounts directly benefits Defendant's clout and overall marketability for her professional ventures.

83.    As previously set forth herein, Defendant has spent years trying to leverage Plaintiff's name, identity, and/or likeness on social media platforms for her own commercial benefit, and/or to increase the circle of her influence on such platforms.  Plaintiff has never consented to Defendant's use of his name, identity and/or likeness to market her professional ventures as a social media influencer and/or purported business coach and entrepreneur.

84.    As set forth herein, Defendant intentionally published false statements about Plaintiff on her Instagram account, under the account *@theglamuniversity* to be read by the public at large and the 250k+ followers of her account.

85.    Again, Defendant used Plaintiff's name and/or identity in the September 17th Posts on Instagram, identifying Plaintiff by his Instagram account *"@tip"* even though Plaintiff never consented to Defendant's use of his name, identity, or likeness to be used in Defendant's social media posts.

86.    The false statements made in the September 17th Posts clearly and unequivocally communicate the falsehood that federal investigators are investigating HARRIS for sex trafficking in connection with another high-profile celebrity being prosecuted by such by stating "@tip [HARRIS] are you ready?" over the image of that high profile individual, with words identifying that individual, along with the fact that he was arrested by federal authorities for alleged sex trafficking, and stating "feds are gathering the facts. @tip [HARRIS]."

87.    Because "*@tip*" refers to HARRIS's Instagram account, third parties reading the September 17th Posts reasonably understood them to be about HARRIS specifically, and reasonably understood the statements to mean that Plaintiff is a party to a federal crime of sex trafficking alongside the prominent

celebrity entertainer widely known for being federally prosecuted for such conduct.

88.    Defendant published false statements to the public at large, and specifically to her 250k+ followers, all of whom were likely aware of the facts and circumstances surrounding the celebrity entertainer being prosecuted for the federal crime of sex trafficking. These statements had a damaging impact on Plaintiff's business, trade, and professional reputation by falsely claiming that Plaintiff was the subject of, or defendant in, a federal criminal investigation and/or prosecution for sex trafficking alongside the prominent celebrity entertainer being prosecuted for such conduct.

89.    Thus, by directly implying Plaintiff was a party to such criminal conduct, Defendant caused injury to Plaintiff in his business, trade, occupation; exposed him to hatred, contempt, ridicule and shame; and/or discouraged those in Plaintiff's personal and professional circles from associating and/or conducting business with him.

90.    In publishing these false statements, Defendant knew that they would have a damaging impact on Plaintiff's business, trade, and professional reputation by falsely claiming that Plaintiff was the subject, or defendant, in a federal criminal investigation and/or prosecution for sex trafficking alongside the prominent celebrity entertainer being prosecuted for such conduct.

91.    In publishing these false statements, Defendant intentionally caused these falsehoods to be disseminated to individuals both inside and outside of Plaintiff's personal and professional circles, and made the statements in order to discredit and/or humiliate him.

92.    Defendant published these false and defamatory statements to third parties as part of Defendant's ongoing campaign to harass Plaintiff, and his family, and to garner attention and engagement on her social media accounts, and boost her clout, or her own popularity, as a social media influencer.

93.    Defendant knew that publishing these false statements about Plaintiff on the internet would have a damaging impact on Plaintiff's credibility and reputation, or knew that the damaging impact on Plaintiff's credibility and reputation was substantially certain to occur.

94.    Defendant knew, or had reason to know, said statements have a natural tendency to injure or cause damages to Plaintiff, subjecting him to public contempt.

95.    Defendant knew, or had reason to know, said statements would directly injure Plaintiff's business, trade, and/or professional reputation.

96.    As a direct and proximate result of Defendant's violation of Plaintiff's privacy by presenting him in a false light, Plaintiff has suffered, and will likely suffer continuing harm his business, trade and profession, reputation, all in an amount according to proof at the time of trial.

97.    As a direct and proximate result of Defendant's invasion of Plaintiff's privacy by presenting him in a false light, Plaintiff has suffered shame, mortification, humiliation, embarrassment hurt feelings, mental and emotional distress, and discomfort, all to Plaintiff's damage in an amount proven at trial.

98.    Plaintiff is informed and believes, and on that basis alleges, that the aforesaid acts directed toward Plaintiff by Defendant were carried out with a conscious disregard of Plaintiff's right to be free from such wrongful, illegal conduct, such as to constitute oppression, fraud, or malice pursuant to section 3294 of the California Civil Code, among other provisions, entitling Plaintiff to punitive damages from Defendant in an amount appropriate to punish and set an example of her.

\\\

\\\

COMPLAINT FOR DAMAGES | DEMAND FOR JURY TRIAL

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial to resolve each and every one of the causes of action against the Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as to each of the Causes of Action set forth therein, for each such category of damages set forth herein, only to the extent provided by law, according to proof, as follows:

1. For non-economic damages suffered by Plaintiff.

2. For economic damages suffered by Plaintiff.

3. For punitive and exemplary damages. to the extent provided by law.

4. For Plaintiff's reasonable attorneys' fees. to the extent provided by law.

5. For Plaintiff's reasonable experts' fees.

6. For an award of prejudgment interest.

7. For declaratory and injunctive relief.

8. For such other relief as the Court deems just and proper

DATE:  DECEMBER 13, 2024          CAMERON BANKS LAW. A PROF. CORP.

_____

Indira J. Cameron-Banks

Attorneys for Plaintiff
CLIFFORD J. HARRIS, JR.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**EXHIBIT A**

EXHIBITS TO COMPLAINT FOR DAMAGES- EXHIBIT A



REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**EXHIBIT B**