Keita T. Middleton (CA SBN 283813)
19744 Beach Blvd., #156
Huntington Beach, CA 92648
Email: kmiddleton@ktmlaw.us
(714) 797 -7671

Attorney for Defendant/Cross-Claimant,
Sabrina D. Peterson

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLIFFORD J. HARRIS, Jr., an individual, | Case No:    2:24-cv-10781 |
| Plaintiff/Counter Defendant, | |
| vs. | **SECOND AMENDED COUNTER CLAIM OF COUNTER CLAIMANT SABRINA D. PETERSON** |
| Defendant/Counter Claimant. | **First Cause of Action**<br>Defamation – Libel *Per Se* |
| | **Second Cause of Action**<br>Abuse of Process |
| SABRINA D. PETERSON, an individual | **Third Cause of Action**<br>Intentional Infliction of Emotional Distress |
| Counter Claimant, | |
| vs. | **Demand for Jury Trial** |
| CLIFFORD J. HARRIS, Jr., an individual, | |
| Counter Defendant. | |

1

COMES NOW Counterclaimant, Sabrina D. Peterson ("Counter Claimant" or "Peterson"), who brings this Second Amended Counter Complaint for Damages and Demand for Jury Trial, rested upon this Court's diversity jurisdiction, against Counter Defendant Clifford J. Harris, Jr., an individual ("Counter Defendant" or "Harris") alleging, based upon information and belief, the following with respect to Counter Defendant's conduct:

## I.   NATURE OF THE CASE

1.   PETERSON first came into the presence of HARRIS because PETERSON was good friends with HARRIS's wife between the years 2004 – 2021.

2.   The friendship eventually ended after a disagreement between PETERSON and HARRIS, stemming from PETERSON'S attempt to protect her friend (HARRIS' wife) from HARRIS's then assistant.  HARRIS did not approve of PETERSON involving herself in the situation and as a result pulled a gun to PETERSON's head, in front of other witnesses, such as: a sitting judge, a licensed attorney, HARRIS's deceased sister and an ex-member of HARRIS's wife's singing group, Xscape.  At this point, PETERSON had observed several occasions over the years where HARRIS and his assistant (and other people in his circle) engaged in what PETERSON felt was abuse towards her friend, HARRIS's wife, and decided to stand up and protect her friend.  After this encounter, HARRIS disapproved of his wife continuing a friendship with PETERSON and after some time the friendship ended.  Since the friendship ended, PETERSON has not tried to rekindle the friendship, especially since she will forever be traumatized by the assault.

3.   Eventually, the conflict between PETERSON and HARRIS would play out publicly on social media, igniting the current string of events, when PETERSON criticized HARRIS's public support for a specific public official who PETERSON believes helped influence HARRIS's approval for his Affordable Housing Loan for the community he was building in Atlanta while PETERSON, a constituent of Georgia at the time, believed that any public funds should be used to combat the rising crime rate in the Atlanta, Georgia area.  PETERSON further inserted the idea that it was no wonder HARRIS, and this particular public official were aligned since a) the public official was not, as PETERSON believed, taking the necessary steps to combat the recent increased

**SECOND AMENDED COUNTER CLAIM OF COUNTER CLAIMANT SABRINA D. PETERSON**

violent crimes against women (i.e., robbery, murder, rape, carjacking) and b) HARRIS liking to pull guns to women's head.

4.   In response to PETERSON's public disapproval of the alliance between HARRIS and the referenced public official, HARRIS's wife made an Instagram post with a photograph of PETERSON's minor son with HARRIS, including a caption alluding to the idea that HARRIS could not have pulled a gun on PETERSON since PETERSON's son has spent time with HARRIS and called HARRIS "uncle".

5.   This public dialogue triggered a series of individuals contacting PETERSON and sharing their own personal experience with HARRIS where they also felt victimized.  PETERSON shared these direct messages with her Instagram audience, while keeping the names of the individuals private.

6.   PETERSON was subsequently contacted by a federal agent with Department of Homeland Security, by the name of Antonio B. and whose full name and contact information will only be disclosed under seal or in Judge's Chambers, so as to not compromise the integrity of the federal investigation.

7.   HARRIS alleges that PETERSON is nothing but a clout chasing, desperate for attention, convicted felon who will do anything for likes and follows when nothing could be further from the truth.  PETERSON has built a multi-million-dollar brand based on her hard work, stellar customer service and the reputation of her brand.  PETERSON had a large following prior to any public falling out with HARRIS or his affiliations and does not need this negative interaction on social media platforms to increase her following or increase revenue for her brands.  In fact, quite the opposite is true because PETERSON has lost brand deals and other business opportunities due to this public falling out.

8.   The truth of the matter is, PETERSON is an advocate for women's rights, a fighter against femicide or any crime against a women or children and will always speak out against people who habitually commit crimes, especially against vulnerable people.

9.   PETERSON files this cross complaint in response to being bullied, silenced and intimidated by HARRIS and is prepared to provide evidence and witnesses to support this counter

**SECOND AMENDED COUNTER CLAIM OF COUNTER CLAIMANT SABRINA D. PETERSON**

claim.

## II. PARTIES

10. Counter Claimant PETERSON is an individual who is, and has been, since 2019, a resident of, and domiciled in, the State of California, with the intention of permanently residing within that state.

11. Counter Claimant is informed and believes, and on that basis alleges, that Counter Defendant HARRIS is and always has been a resident of and domiciled in the State of Georgia.

## III. JURISDICTION AND VENUE

12. The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332 because there is complete diversity of the parties.  Counter Claimant PETERSON is domiciled in the State of California.  Counter Defendant HARRIS is domiciled in the State of Georgia.

13. Venue is appropriate in the Central District of California pursuant to 28 U.S.C. §1391(b)(3) as Counter Claimant resides in Los Angeles County where she suffered her alleged injuries due to Counter Defendant's conduct.

## IV. CAUSES OF ACTION FOR RELIEF

### FIRST CAUSE OF ACTION

### Defamation – Libel *Per Se*

14. Counter claimant incorporates by reference all allegations in the foregoing paragraphs of this Counter Claim as though fully set forth herein with the same force and effect as if such paragraphs were set forth fully at length here.

15. Counter claimant published false and defamatory statements to third parties with full and actual knowledge that said statements were false or with reckless disregard for whether said statements were false.

16. These statements were made when HARRIS filed the December 13, 2024 complaint against PETERSON alleging that PETERSON "markets herself as a "cannabis entrepreneur" even though neither she nor her company, Pretty High Co., LLC has any license to sell cannabis product in California, or any state in which she distributes such product".  This statement is false and is in direct conflict with PERERSON'S proprietary interest, as it alleges that PETERSON is engaged

in criminal activity or illegal conduct.

17. In fact, PETERSON's "Pretty High Co, LLC" sold CBD, which PETERSON did have a license for while her website was active.  *Please see attached* as Exhibit "A" <u>License Under the Produce Dealers Act & Processors Law</u>.

18. At the inception of her company "Pretty High Co., LLC", PETERSON was advised that since CBD is still part of the hemp plant it is still considered cannabis.  At no time has PETERSON illegally sold cannabis product.

19. PETERSON did not renew her license when it expired in 2022 and discontinued selling products on her "Pretty High Co., LLC" website because of the negative press she was receiving in connection to the other action between PETERSON and HARRIS in Los Angeles Superior Court Case Number 21STCV07836. Therefore, Counter Claimant decided to suspend this business.

20. In any event, by publishing these false statements, Counter Defendant knew that they would have a damaging impact on Counter Claimant's business, trade, and professional reputation by falsely claiming that Counter Claimant did not have a license to see cannabis product in California, insinuating engagement in illegal activity.

21. These published false statements were false and thus actionable.

22. In publishing these false statements, Counter Defendant intentionally caused these falsehoods to be disseminated to the public in order to discredit, humiliate, or trigger a potentially criminal investigation.

23. Counter Defendant knew that publishing these false statements about Counter Claimant to the public would have a damaging impact on Counter Claimant's reputation and proprietary interest and that injury was substantially certain to occur.

24. Statements that amount to Libel *Per Se* are inherently defamatory and damaging to a person's reputation without needing further explanation and the harm is presumed and the Counter Claimant does not need to prove actual damages.

25. Counter Defendant's false statement about Counter Claimant are not afforded any privileges or protections, Litigation Privilege or otherwise because in order for the Litigation

1   Privilege to attach, a 4-prong test must be met where the communication was a) made in a judicial

2   or quasi-judicial proceeding; b) by litigants or other participants authorized by law; c) to achieve

3   the objects of the litigation; and d) that have some connection or logical relation to the action.

4   Here, prongs c) and d) have not been met, as these false statements do not achieve the object of

5   Counter Defendant's (Plaintiff in the lead case) litigation or have a connection or logical relation

6   to the HARRIS's defamation cause of action in proving or disproving whether HARRIS is under

7   federal investigation for trafficking.

8                                    **V. SECOND CAUSE OF ACTION**

9                                            **Abuse of Process**

10      26. Counter Claimant incorporates by reference all allegations in the foregoing paragraphs on

11   the Counter Complaint as though fully set forth herein with the same force and effect as if such

12   paragraphs were set forth fully at length here.

13      27. As set forth herein, Counter Defendant has used the legal process in a manner that is not

14   proper in the regular prosecution of the proceedings, to bully, harass and silence PETERSON.

15      28. HARRIS's Complaint is not a good-faith legal filing, but rather a retaliatory and malicious

16   attempt to discredit and silence Counterclaimant's protected speech.

17      29. Counter Defendant has used the legal system to further a personal vendetta against Cross

18   Claimant, not to resolve any legitimate dispute, and with an improper motive to suppress and

19   retaliate against Counterclaimant.

20      30. Counter Defendant has an ulterior purpose or motive behind the use of the process,

21   indicating the process is being used for an improper purpose: to bully, harass and silence

22   PETERSON.

23      31. Counter Claimant has suffered damage or harm resulting from the abuse of the process,

24   such as sleeplessness, depression, anxiety, loss of consortium, stress and weight fluctuation and

25   has sought counseling and therapy to treat her symptoms.

26      32. This abuse of process is a regular issue as the litigation is ongoing.

27      33. Counter Defendant initiated this action with the intent to do harm without excuse or

28   justification as a simple google search into Counter Defendant's criminal activity will produce.

**SECOND AMENDED COUNTER CLAIM OF COUNTER CLAIMANT SABRINA D. PETERSON**

## VI. <u>THIRD CAUSE OF ACTION</u>

### Intentional Infliction of Emotional Distress

34. Plaintiff incorporates by reference all allegations in the foregoing paragraphs of this Counter Claim as though fully set forth herein with the same force and effect as if such paragraphs were set forth fully at length here.

35. Counter Claimant suffered intentional infliction of emotional distress as a result of Counter Defendant's actions when he published false statements in his Complaint against PETERSON that was outrageous when he knew this would negatively impact Counter Claimant's proprietary interest and HARRIS acted purposely or recklessly, causing PETERSON distress so severe that it could be expected to adversely affect Counter Claimant's mental health. HARRIS's conduct caused Counter Claimant distress in the form of stress, anxiety, depression, sleeplessness and a constant change in appetite.

36. Further, Counter Claimant suffered additional intentional infliction of emotional distress as a result of a video HARRIS made on July 6, 2025 and posted on his Instagram page, where he made some statements which PETERSON understood to be a subliminal threat, where the Counter Defendant stated "Yeah, Man, I'm just out here…you know, it's a beautiful day to not be a buster…it's a beautiful day to mind your business … it's a beautiful day to not be negative…don't take this day for granted…don't be out here spreading propaganda just because you're unhappy with your life…". This video was re-posted on another Instagram profile named "livebitez" where there were many comments directed towards PETERSON because many viewers believed the video was directed towards PETERSON. The video can be found on https://www.instagram.com/p/DLxqHgyP2-c/?igsh=NTc4MTIwNjQ2YQ==. Under this video there are comments directed towards PETERSON, addressing her by her first name, Sabrina, so the average viewer understood this message to be directed towards the Counter Claimant. *Please see attached* as Exhibit "B" screen shots of the multiple comments directed towards Counter Claimant.

37. As a result of this video, PETERSON began receiving multiple messages alerting her to the video made by HARRIS. In PETERSON's view, with HARRIS being visibly agitated in the

**SECOND AMENDED COUNTER CLAIM OF COUNTER CLAIMANT SABRINA D. PETERSON**

video, there was an underlying, subliminal threat, presumably another tactic to silence and intimidate Counter Claimant.

38. Counter Defendant's acts of sending a subliminal message were outrageous, to purposely or recklessly cause Counter Claimant emotional distress so severe that it could be expected to adversely affect PETERSON'S mental health and this conduct did in fact cause such distress in the form of stress, anxiety, depression, sleeplessness and a constant change in appetite

### VII. JURY TRIAL DEMAND

Counter Claimant hereby demands a jury trial to resolve each and every one of the causes of action against the Defendant.

### VIII. PRAYER FOR RELIEF ON COUNTER COMPLAINT

WHEREFORE, Counterclaimant Sabrina D. Peterson respectfully prays that this Court enter judgment in her favor and against Counter Defendant Clifford J. Harris, Jr., according to proof, and award the following relief:

1. General damages for non-economic damages suffered by Counter Claimant, such as: compromise of proprietary interest, harm to reputation, emotional suffering, public humiliation, and economic harm in an amount according to proof at trial.

2. For punitive and exemplary damages to the extent provided by law.

3. Special damages for lost business opportunities, contracts, speaking engagements, and professional associations impacted by the defamatory and retaliatory conduct.

4. Consequential damages for foreseeable losses caused by the defamatory and retaliatory conduct, including reputational harm impacting future earnings and partnerships.

5. Punitive and exemplary damages in an amount sufficient to deter similar conduct by Counter Defendant.

6. For declaratory and injunctive relief by restraining Counter-defendant(s) from further defamation, harassment, or public disparagement of Counter-claimant.

7. For Counter Claimant's reasonable attorneys' fees to the extent provided by law.

8. For reasonable experts' fees.

9. For an award of prejudgment interest.

**SECOND AMENDED COUNTER CLAIM OF COUNTER CLAIMANT SABRINA D. PETERSON**

1    10. Reasonable costs and expenses of litigation, including filing fees and service costs;

2    11. Any additional relief the Court deems just, equitable, and proper under the circumstances.

3

4

5    DATED: October 8, 2025                                          Respectfully submitted,

6

7                                                                    _____
                                                                    Keita T. Middleton

8                                                                    Attorney for Counter Claimant
                                                                    SABRINA D. PETERSON
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

**SECOND AMENDED COUNTER CLAIM OF COUNTER CLAIMANT SABRINA D. PETERSON**