Indira J. Cameron-Banks (CBN 248634)
**CAMERON BANKS LAW**, A PROF. CORP.
407 N. Maple Dr., Grnd. Fl.
Beverly Hills. CA 90210
424.757.0585 | indira@cameronbanks.law

Attorney for Plaintiff,
CLIFFORD J. HARRIS, JR.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD J. HARRIS, Jr., an individual,<br><br>         Plaintiff,<br><br>    v.<br><br>SABRINA D. PETERSON, an individual,<br><br>         Defendant.<br><br>SABRINA D. PETERSON, an individual<br><br>         Counter Claimant,<br><br>    vs.<br><br>CLIFFORD J. HARRIS, Jr., an individual,<br><br>         Counter Defendant. | Case No. 24-CV-10781-FMO-RAO<br><br>**PLAINTIFF CLIFFORD J. HARRIS'S MOTION TO DISMISS DEFENDANT SABRINA D. PETERSON'S SECOND AMENDED COUNTER-COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>[Declaration of Indira Cameron-Banks]<br><br>DATE:  December 4, 2025<br>TIME:   10:00 A.M.<br>CRTM:  First St. Courthouse, 6D<br><br>Hon. Fernando M. Olguin |

**TO THIS HONORABLE COURT, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD—**

PLEASE TAKE NOTICE that on December 4, 2025, or as soon thereafter as the matter may be heard, Plaintiff and Counter-Defendant Clifford J. Harris ("Harris"), will, and hereby does, move this Court an Order dismissing the Counter-Complaint, and all counterclaims set forth therein pursuant to Fed. R. Civ. P. 12(b)(6) for failure to set forth factual allegations that plausibly establish any cognizable claim for relief against Harris.

This motion will be made before the Honorable Fernando M. Olguin, United States District Judge, in Courtroom 6D at the 1st Street Courthouse located at 350 West 1st Street, Los Angeles, California 90012.

This motion is based upon this Notice, the attached Memorandum of Points and Authorities, all pleadings, records, and other documents on file with the Court in this action, and upon such oral and/or documentary evidence as may be presented at, before, and after the hearing of this motion. This motion is made after undersigned counsel was able to meet and confer with Defendant and Counter-Claimant about its contents pursuant to Local Rule 7-3, along with the rules specific to this Court, on October 22, 2025 as set forth in the attached declaration.

DATED: October 29, 2025                    CAMERON BANKS LAW, A PROF. CORP.

                                                 */s/ Indira J. Cameron-Banks*
                                                  Indira J. Cameron-Banks

                                               *Attorneys For* PLAINTIFF
                                                  Clifford J. Harris

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................2

II.  RELEVANT PROCEDURAL BACKGROUND .....................................2

III. RELEVANT LEGAL FRAMEWORK ..................................................4

IV.  POINTS AND AUTHORITIES ............................................................5

    A.  Peterson's Counter-Complaint Fails to Set Forth Any Facts Sufficient to Establish Any Cognizable Claim Whatsoever. ...........5

    B.  Peterson Cannot Assert Any Cognizable Claims Based on the Allegation Made in Harris's Initial Complaint. ...............................6

        1.  The Litigation Privilege, Codified in Cal. Civ. Code § 47(b) Absolutely Shields the Allegation Made in Harris's Initial Complaint from Giving Rise to Any Claim. .....................................................................................7

        2.  California's Anti-SLAPP Statute, Cal. Code. Civ. P § 425.16, Absolutely Prevents Peterson from Filing Counterclaims Against Harris for the Allegation Made in Harris's Initial Complaint. .................................................8

    A.  Peterson Fails to Set Forth Any Factual Allegations That Plausibly Give Rise to a Claim for Intentional Infliction of Emotional Distress ........................................................................10

V.   CONCLUSION ..................................................................................11

i

**Cases**

*Aronson v. Kinsella*, 58 Cal. App. 4th 254, 270 (1997) .......... 7

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) .......... 5
*Ashcroft,* 556 U.S. at 678 .......... 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) .......... 5
*Twombly*, 550 U.S. at 570 .......... 10

*Coleman v. Gulf Insurance Group* 41 Cal.3d 782, 792 (1986) .......... 6

*Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) .......... 4

*Grenier v. Taylor* 234 Cal.App.4th 471, 486 (2015) .......... 6

*Hughes v. Pair* 46 Cal.4th 1035, 1050-1051 (2009) .......... 10

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) .......... 5

*Issa v. Applegate,* 31 Cal.App.5th 689, 702 (2019) .......... 6

*Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) .......... 5
*Jackson,* 353 F.3d at 758 .......... 11

*Jackson v. Mayweather* 10 Cal.App.5th 1240, 1259 (2017) .......... 6

*Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) .......... 5
*Karim-Panahi*, 839 F.2d at 623 .......... 11

*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) .......... 5
*Moss,* 572 F.3d at 969 .......... 5, 11

*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) .......... 4

*Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011) .......... 4

*Rubin v. Green*, 4 Cal. 4th 1187, 1193-94 (1993) .......... 7

*Nevellier v. Sletten*, (2002) 29 Cal. 4th 82, 88 .......... 9

*Silberg v. Anderson*, 50 Cal. 3d 205, 215-16 (1990) .......... 7
*Silberg*, 50 Cal. 3d at 212 -219 .......... 7

*Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) .......... 5
*Somers,* 729 F.3d at 959 .......... 5

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) .......... 4

**Statutes**

Cal Civ. Code § 47(b) .......... passim
Cal. Code Civ. P. § 425.16 .......... passim

## I. INTRODUCTION

In her briefing in opposition to the Motion to Dismiss the Counter-Complaint ("Motion") filed by Plaintiff Clifford Harris ("Harris") hereby moves to dismiss the Second Amended Counter-Complaint filed by Defendant/Counter-Plaintiff Sabrina Peterson ("Peterson"), and all the counterclaims asserted therein -- Defamation, Abuse of Process, and Intentional Infliction of Emotional Distress.

As set forth in Harris's first motion to dismiss the First Amended Counter-Complaint, all three of her counterclaims are based on a single factual allegation asserted in Harris' complaint that are absolutely protected by California's the litigation privilege, Cal Civ. Code § 47(b), and constitutes Constitutionally protected free speech under California's statute against strategic litigation against public participation ("Anti-SLAPP"), Cal. Civ. P. § 425.16. Thus, the allegations made by Harris in his initial complaint could never give rise to any cognizable claim. While her first two counterclaims (defamation and abuse of process) are *solely* based on the single allegation made in Harris's Complaint, Peterson's counterclaim for intentional infliction of emotional distress is also based on a social media post by Harris, as well-known entertainer, promoting one of his comedy shows. However, Peterson fails to plead any factual allegations that could plausibly give rise to such a claim – or any legal claim for that matter.

As such, even with the multiple opportunities to amend her Counter-Complaint, Peterson fails to allege any facts that give rise any cognizable counter claim, and consequently dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), of all the counterclaims asserted therein <u>with prejudice</u>, is appropriate.

## II. RELEVANT PROCEDURAL BACKGROUND

Harris filed this lawsuit on December 13, 2024, asserting tort claims against Peterson based on false, defamatory statements she publicly published about him on September 17, 2024 that he was under federal investigation for the sexual trafficking of women in connection with a celebrity entertainer currently being prosecuted for

2

such conduct. (Dkt. 1, Compl. ¶ 17).  In response, Peterson filed an answer and asserted counterclaims against Harris for defamation, abuse of process and intentional infliction of emotional distress.  (Dkt. 20)  She subsequently amended her Counter-Complaint ("First Amended Counter-Complaint), and Harris moved to dismiss the Counter-Complaint in its entirety based on the fact that Peterson failed to present any factual allegations that could give rise to any legally viable claims for defamation, abuse of process, and/or intentional infliction of emotional distress.  (Dkt. 28)

      Peterson's counterclaims for **defamation**, **abuse of process,** and **intentional infliction of emotional distress** are based on the specific allegation in Harris's Complaint, under the heading that *"PETERSON has a well-established history of deceitful, fraudulent and criminal conduct, as well as threatening, assaultive and violent (criminal) conduct"* made in Paragraph 17, that states: "PETERSON markets herself as a "cannabis entrepreneur" even though neither she nor her company, Pretty High Co., LLC has any license to sell cannabis products in California, or any state in which she distributes such products." (Dkt. 1)  Notably, attached to Peterson's Second Amended Counter-Complaint, is an expired license from the California Department of Agriculture authorizing distribution of farm produce only, not cannabis or cannabis- related products, which is authorized only by the California Department of Cannabis Control. (Dkt. 36-1)

      Peterson's counterclaim for **intentional infliction of emotional distress** is also seemingly based on a social media post made by Harris (a popular and well-known entertainer) on July 6, 2025, telling his (over 14 million) social media followers about his upcoming comedy show.  The video shows him walking outdoors speaking about the "beautiful day" and ends with a flyer advertising his comedy show.  In the video he states:

> *Yeah man, I'm just out here, man. Just thinking how beautiful it is today, man. You know it's a beautiful day to not be a buster, man. It's a beautiful day to not hate on nobody. It's a beautiful day to not spread*

3

*lies and to not be negative. It's a beautiful day, man to mind your business. It's a beautiful day, bro. God has blessed us with this beautiful day. Don't take it for granted. Don't take this beautiful day for granted. Don't be out here spreading propaganda just because you unhappy with your life and yourself. Man. God has blessed you too, man. He got your blessings. Don't look to nobody else and point blame at somebody else because you ain't reached and tapped into your blessings yet they coming Alright. Alright, and and furthermore, I'll be in DC man. I'll be in DC at the Improv in two more show (sic) the rest are sold out.*

See https://www.instagram.com/p/DLxa9UHMHct/ (Instagram, last accessed October 28, 2025). Peterson's claim is seemingly based on the fact that approximately 3 -- of the over 45,000 social media accounts that either "liked" or "commented" on the social media post – referenced Peterson (by her first name "Sabrina"). (Dkt. 36-2).

### III. RELEVANT LEGAL FRAMEWORK

Pursuant to Fed. R. Civ. P. 12(b)(6), the Court may dismiss a Complaint for failure to state a claim upon which relief can be granted. "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (*quoting Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). A complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true . . . allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re*

4

*Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[T]o survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

Dismissal, pursuant to Fed. R. Civ. P. 12(b)(6) or otherwise, without leave to amend, is proper when "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment," *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) (internal quotation marks omitted), or when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

IV.   **POINTS AND AUTHORITIES**

   **A. Peterson's Counter-Complaint Fails to Set Forth Any Facts Sufficient to Establish Any Cognizable Claim Whatsoever.**

In her Second Amended Complaint, Peterson adds factual allegations that continue to fail to give rise to any legally cognizable claims. Specifically, there are no reasonable inferences from the additional allegations that are "plausibly suggestive of a claim entitling the plaintiff to relief" or support any cognizable legal theories. *See Moss,* 572 F.3d at 969; *Somers,* 729 F.3d at 959.

To the extent that Peterson's counterclaims are based on a specific allegation made in Paragraph 17 of Harris's complaint, they are legally precluded as absolutely protected speech subject to California's litigation privilege, Cal Civ. Code § 47(b), and California's Anti-SLAPP statute, Cal. Code Civ. P. § 425.16.

To the extent that Peterson's intentional infliction of emotional distress counterclaim is also based on Harris's generic social media post promoting his upcoming comedy show for which there is no factual support demonstrating that the post was directed toward Peterson, she fails to set forth any facts that plausibly give rise to a legally cognizable claim.

As such, the instant Motion should be granted pursuant to Fed. R. Civ. P. 12(b)(6), and the Counter-Complaint and all counterclaims should be dismissed in their entirety, with prejudice.

### B. Peterson Cannot Assert Any Cognizable Claims Based on the Allegation Made in Harris's Initial Complaint.

Peterson's counterclaims are based on a factually accurate allegation made in Paragraph 17 of Harris's Complaint that Peterson held herself out to be a "cannabis entrepreneur" but did not hold a license to grow or sell cannabis.[1] This allegation

---

[1] To state a counterclaim for defamation, Peterson would have to identify and sufficiently allege facts about (1) the publication that is (2) false, (3) defamatory, (4) unprivileged, that (5) has a natural tendency to injure or causes special damage. *See Jackson v. Mayweather* 10 Cal.App.5th 1240, 1259 (2017); *Grenier v. Taylor* 234 Cal.App.4th 471, 486 (2015). A publication is considered "defamatory" generally when it injures a person's "office, profession, trade or business." *See generally Issa v. Applegate,* 31 Cal.App.5th 689, 702 (2019).

To state a counterclaim for abuse of process, Peterson would have to identify and sufficiently allege facts showing that Harris "use[d] the court's process for a purpose other than that for which the process was designed" and is "misus[ing] the power of the court" in order to "perpetrat[e] an injustice." *S.A. v. Maiden* 229 Cal.App.4th 27, 41 (2014). Peterson has to plead sufficient facts that Harris "(1) entertained an ulterior motive in using the process and (2) committed a willful act in a wrongful manner." *Coleman v. Gulf Insurance Group* 41 Cal.3d 782, 792 (1986).

As set forth herein, both claims are barred by the litigation privilege, Cal. Civ.

was made to demonstrate Peterson's history of deceitful conduct (which is consistent with the false statements published about Harris giving rise to *his* defamation claims). Regardless, California's legislature has expressly protected statements made in litigation as protected speech, and Peterson is absolutely barred from asserting tort claims based on such statements.

### 1. The Litigation Privilege, Codified in Cal. Civ. Code § 47(b) Absolutely Shields the Allegation Made in Harris's Initial Complaint from Giving Rise to Any Claim.

In California, the litigation privilege, codified at Cal. Civ. Code § 47(b), provides that communicative conduct related to judicial proceedings is "***absolutely*** immune from tort liability." (emphasis added) *Rubin v. Green*, 4 Cal. 4th 1187, 1193-94 (1993) (litigation privilege broadly construed to assure litigants "'the utmost freedom of access to the courts to secure and defend their rights....'"). Moreover, the litigation privilege applies "irrespective of [the] maliciousness" of the communicative act and has "immunize[d] defendants from tort liability based on theories of abuse of process . . . [and] intentional infliction of emotional distress." *Silberg v. Anderson*, 50 Cal. 3d 205, 215-16 (1990); *see also Aronson v. Kinsella*, 58 Cal. App. 4th 254, 270 (1997) ("[T]he privilege is absolute and thus evidence of malice is irrelevant; the absolute privilege protects even statements which are false, fraudulent or motivated by malice.") The Supreme Court in *Silberg,* clarified and confirmed that the litigation privilege is absolute, should be applied broadly and is applicable to all tort claims (except malicious prosecution). *See Silberg*, 50 Cal. 3d at 212 -219.

All of Peterson's counterclaims are based on a theory of tort liability (defamation, abuse of process, and intentional infliction of emotional distress), and her defamation and abuse of process claims are solely based on statements made by one

---

Code § 47(b), and California's Anti-SLAPP Statute, Cal. Code. Civ. P § 425.16,

7

party (Harris) in this instant judicial proceeding against another party (Peterson). Thus, Peterson's counterclaims legally fail, and consequently, she has not, and indeed cannot, set forth any cognizable claim for relief.

### 2. California's Anti-SLAPP Statute, Cal. Code. Civ. P § 425.16, Absolutely Prevents Peterson from Filing Counterclaims Against Harris for the Allegation Made in Harris's Initial Complaint.

In addition to codifying the litigation privilege, the California Legislature expressly enacted the Anti-SLAPP statute, Cal. Code Civ. P. § 425.16 to "to encourage continued participation in matters of public significance" such as litigation, and prevent the chilling of such participation "through abuse of the judicial process." Cal Code Civ Proc § 425.16(a) As such, the Legislature expressly directed this Anti-SLAPP statute to be "construed broadly" and provides for a special motion to strike any cause of action against person who engages in conduct to "further …[a] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" absent a Court determination, at the outset of the case, that the party asserting the cause of action has established a probability of prevailing on it. Cal Code Civ Proc § 425.16(b)(1).

The Anti-SLAPP statute expressly identifies constitutionally protected free speech as "any written or oral statement or writing made before a . . . judicial proceeding or . . . any written statement made in connection with an issue under consideration by a . . . judicial body . . . ." Cal Code Civ Proc § 425.16 (e). Thus, California's Anti-SLAPP statute expressly identifies the statements made in the Complaint initiating this action as constitutionally protected speech.

Section 425.16(b)(1) sets forth a two-prong process for determining whether an action constitutes SLAPP. The first prong satisfied here requires the

Court to decide "whether [there is] a threshold showing that the challenged cause of action is one arising from protected activity" meaning that it meets a category under Cal Code Civ Proc § 425.16 (e). *See Nevellier v. Sletten*, (2002) 29 Cal. 4th 82, 88. If the conduct at issue constitutes such "protected activity" then the Court moves to the second prong in order to determine "whether the plaintiff has demonstrated a probability of prevailing on the claim ." *See Id*; Cal. Code. Civ. P, 425.16(b)(1). When both prongs are satisfied, the Court should strike the claims in a Counter-Complaint that violate the protections offered by the Anti-SLAPP statute.

      As set forth above, the first prong of the Anti-SLAPP analysis is satisfied because the conduct underlying Peterson's counterclaims – the single allegation asserted in Harris's Complaint – constitutes constitutionally protected free speech. Further, the second prong of the Anti-SLAPP analysis is satisfied because Peterson cannot, under any circumstance, demonstrate the probability of prevailing on any of these counterclaims based on the single allegation made in Harris's Complaint because it is absolutely protected by the litigation privilege, Cal. Civ. Code § 47(b), as discussed above. Thus, the counterclaims set forth in Peterson's Second Amended Counter-Complaint should be stricken pursuant to California's Anti-SLAPP statute, in addition to being barred by California's litigation privilege.[2]

---

[2] Further, in order to discourage improper counterclaims like those asserted by Peterson, the Anti-SLAPP statute provides that if Harris prevails on the instant Motion, as he should, under California's Anti-SLAPP statute, he shall be entitled to an award of attorney's fees pursuant to Cal. Code Civ. P. § 425.16(c)(1).

9

### C. Peterson Fails to Set Forth Any Factual Allegations That Plausibly Give Rise to a Claim for Intentional Infliction of Emotional Distress

With respect to her third counterclaim for intentional infliction of emotional distress, Peterson asserts that in addition to the allegations made in Harris's Complaint, her counterclaim is supported by Harris's July 6, 2025 social media post on the Instagram platform talking about "a beautiful day" and advertising his upcoming comedy show. (Dkt. 36 at 7)

In order to state a claim for intentional infliction of emotional distress, Peterson would have to allege facts demonstrating "extreme and outrageous conduct" by Harris taken "with the intention of causing, or reckless disregard of the probability of causing, emotional distress." *Hughes v. Pair* 46 Cal.4th 1035, 1050-1051 (2009). Harris's Instagram post with a message that "it's a beautiful day" followed by him advertising to his fans to come to his next comedy show, and posting a flyer advertising his show, is a far cry from "extreme and outrageous conduct" or any conduct that could plausibly cause "emotional distress." The social media post does not reference (or "tag") or allude to Peterson in any way whatsoever as it is a general catchy message in order to announce Harris's upcoming professional engagement.

There is no plausible connection between the social media post and Peterson, and there is no plausible reason to suspect that Peterson would in any way be affected by a social media post by a celebrity entertainer discussing the "beautiful day" and promoting his comedy show. Moreover, Peterson's paranoid characterization of this social media post as "a subliminal threat" is simply unreasonable by any standard. Accordingly, Peterson fails to set forth sufficient facts to state "a claim to relief that is plausible on its face" because the alleged facts do not allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).

Because the "non-conclusory factual content, and reasonable inferences from that content" are <u>not</u> "plausibly suggestive of a claim entitling the plaintiff to relief," Peterson's counterclaim for intentional infliction of emotional distress should be dismissed. *Moss,* 572 F.3d at 969.

## V. CONCLUSION

All of Peterson's counterclaims are based on theories of tort liability stemming from an allegation made in Harris's initiating Complaint and/or conduct that cannot plausibly give rise to any legally cognizable claim. Thus, dismissal of all three counterclaims asserted in Peterson's Counter-Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *See Somers,* 729 F.3d at 959 (Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory.) Because "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment," dismissal of these counterclaims should be <u>with prejudice</u>. *Karim-Panahi*, 839 F.2d at 623; *see also Jackson,* 353 F.3d at 758.

DATED: October 29, 2025          CAMERON BANKS LAW, A PROF. CORP.

           */s/ Indira J. Cameron-Banks*
             Indira J. Cameron-Banks

           *Attorneys For* PLAINTIFF
            Clifford J. Harris