Indira J. Cameron-Banks (CBN 248634)
**CAMERON BANKS LAW**, A PROF. CORP.
407 N. Maple Dr., Grnd. Fl.
Beverly Hills. CA 90210
424.757.0585 | indira@cameronbanks.law

Attorney for Plaintiff,
CLIFFORD J. HARRIS, JR.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD J. HARRIS, Jr., an individual,<br><br>Plaintiff,<br><br>v.<br><br>SABRINA D. PETERSON, an individual,<br><br>Defendant.<br><br>SABRINA D. PETERSON, an individual<br><br>Counter Claimant,<br><br>vs.<br><br>CLIFFORD J. HARRIS, Jr., an individual,<br><br>Counter Defendant. | Case No. 24-CV-10781-FMO-RAO<br><br>**REPLY BRIEF IN SUPPORT OF PLAINTIFF CLIFFORD J. HARRIS'S MOTION TO DISMISS DEFENDANT SABRINA D. PETERSON'S SECOND AMENDED COUNTER-COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>DATE: December 4, 2025<br>TIME: 10:00 A.M.<br>CRTM: First St. Courthouse, 6D<br><br>Hon. Fernando M. Olguin |

## I. INTRODUCTION

In her briefing in opposition to the Motion to Dismiss the Second Amended Counter-Complaint ("Motion") filed by Plaintiff Clifford Harris ("Harris"), Defendant/Counter-Plaintiff Sabrina Peterson ("Peterson") -- formerly *pro se*, now represented by retained counsel – asserts that her counterclaims for Defamation, Abuse of Process, and Intentional Infliction of Emotional Distress ("IIED"), are based on a single factual allegation in the initiating Complaint in Paragraph 17:

> PETERSON markets herself as a "cannabis entrepreneur" even though neither she nor her company, Pretty High Co., LLC has any license to sell cannabis products in California, or any state in which she distributes such products.

(Dkt. 1). **The truth of this allegation is undisputed** -- Peterson has marketed herself as a "cannabis entrepreneur" and neither she nor her company has held any license.[1]

She further asserts that her IIED claim is based on a social media post made by Harris (a popular and well-known entertainer) on July 6, 2025, telling his (over 14 million) social media followers about his upcoming comedy show by taking a walk outdoors speaking about the "beautiful day," and ending with a flyer advertising his comedy show.[2] **It is undisputed that this social media post neither references, pictures, or alludes to Peterson in any way whatsoever**. As the social media post is nothing more than an upbeat, positive message to his fans and followers announcing another positive event -- his upcoming professional

---

[1] This is further reinforced by the exhibit attached to Peterson's Second Amended Counter-Complaint, which is a copy of an expired license from the California Department of Agriculture authorizing distribution of farm produce only, not cannabis or cannabis- related products, which is authorized only by the California Department of Cannabis Control. (Dkt. 36-1)

[2] The social media post is quoted in full in Harris's motion. (Dkt. 37 at 2-3) *See* https://www.instagram.com/p/DLxa9UHMHct/ (Instagram, last accessed October 28, 2025).

2

engagement -- which Peterson, seemingly paranoid, subjectively characterizes as a "subliminal threat" although **it is undisputed that there is no threatening language in the post.**

As such, Peterson fails to demonstrate that the Second Amended Counterclaim sets forth any non-conclusory factual allegations that plausibly give rise to a cognizable legal claim upon which relief can be granted.

First, to the extent that Peterson's claims are based on a single factual allegation in the Complaint, her claims are barred by the litigation privilege, Cal Civ. Code § 47(b), and California's statute against strategic litigation against public participation ("Anti-SLAPP"), Cal. Civ. P. § 425.16, because **truthful allegations in a Complaint constitute protected speech.**

Second, to the extent that the IIED claim is based on a generic, positive, social media post that in no way references or alludes to Peterson, and is encourages Harris's fans and followers to enjoy a "beautiful day," and come to his upcoming event, Peterson fails to allege any facts that can plausibly give rise to a cognizable claim. Specifically, there is no plausible inference that the social media post encouraging the public to enjoy "a beautiful day" and see Harris's upcoming show constitutes "extreme and outrageous conduct" by Harris taken with the intention of specifically causing Peterson emotional distress, which is the necessary threshold showing for an IIED claim.

Finally, because there is no possible amendment to the Second Amended Counter-Complaint that could result in any cognizable counter claim based on either (a) the allegation made in Paragraph 17 of the Complaint or (b) the social media post, dismissal, <u>with prejudice</u>, pursuant to Fed. R. Civ. P. 12(b)(6), of all the counterclaims is appropriate.

## II.     LEGAL STANDARD FOR RULE 12(b)(6)

To underscore and reiterate the standard laid out in the Motion, as it is aptly

appropriate here, in order to survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[T]o survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). **The Court need not "accept as true . . . allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences**." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). The challenged claim must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Peterson's Second Amended Complaint continues to fail to give rise to any legally cognizable claims. Specifically, there are no reasonable inferences from the additional allegations that are "plausibly suggestive of a claim entitling the plaintiff to relief" or support any cognizable legal theories. *See Moss,* 572 F.3d at 969; *Somers,* 729 F.3d at 959.

Dismissal, pursuant to Fed. R. Civ. P. 12(b)(6) or otherwise, without leave to amend, is proper when "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment," *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) (internal quotation marks omitted), or when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

## III. POINTS AND AUTHORITIES

### A. Peterson Cannot Assert Any Cognizable Claims Based on the Allegation Made in Harris's Initial Complaint.

#### 1. The Litigation Privilege, Codified in Cal. Civ. Code § 47(b) Absolutely Shields the Statement Made in Harris's Initial Complaint from Giving Rise to Any Claim.

In California, the litigation privilege, codified at Cal. Civ. Code § 47(b), unequivocally provides that **statements made in judicial proceedings constitute privileged speech that are "absolutely immune from tort liability.**" *Rubin v. Green*, 4 Cal. 4th 1187, 1193-94 (1993) (litigation privilege broadly construed to assure litigants "'the utmost freedom of access to the courts to secure and defend their rights....'"); *Silberg v. Anderson*, 50 Cal. 3d 205, 215-16 (1990) (the litigation privilege applies "irrespective of [the] maliciousness" of the communicative act and has "immunize[d] defendants from tort liability based on theories of abuse of process . . . [and] intentional infliction of emotional distress.")[3]; *see generally Aronson v. Kinsella*, 58 Cal. App. 4th 254, 270 (1997) ("[T]he privilege is absolute and thus evidence of malice is irrelevant; the absolute privilege protects even statements which are false, fraudulent or motivated by malice.")

All of Peterson's counterclaims are based on a theory of tort liability (defamation, abuse of process, and intentional infliction of emotional distress) solely based on a single statement made by one party in a judicial proceeding against another party. The single allegation highlighted by Peterson as providing factual support for all of her claims is directly relevant to Harris's claims against Peterson

---

[3] The Supreme Court in *Silberg,* clarified and confirmed that the litigation privilege is absolute, should be applied broadly and is applicable to all tort claims (except malicious prosecution) when it ***expressly rejected the application of an "interest of justice" test to the litigation privilege*** asserted by Peterson in her brief, and specifically overturned the cases relied upon by Peterson in her brief in support of the application of such a test.  *See Silberg*, 50 Cal. 3d at 212 -219. (Dkt. 29 at 5)

as they reveal it highlights the ease with which she presents misleading and/or false information to the public (Compl. ¶ 17).[4]

Thus, all of Peterson's counterclaims legally fail, and consequently, she has failed to set forth any cognizable claim for relief.

### 2. California's Anti-SLAPP Statute, Cal. Code. Civ. P § 425.16, Absolutely Prevents Peterson from Filing Counterclaims Against Harris for the Statement Made in Harris's Initial Complaint.

In addition to codifying the litigation privilege, the California Legislature expressly enacted the Anti-SLAPP statute, Cal. Code Civ. P. § 425.16 to "to encourage continued participation in matters of public significance" such as litigation, and prevent the chilling of such participation "through abuse of the judicial process." Cal Code Civ Proc § 425.16(a)

The Anti-SLAPP statute expressly identifies constitutionally protected free speech as "any written or oral statement or writing made before a . . . judicial proceeding or . . . any written statement made in connection with an issue under consideration by a . . . judicial body . . . ." Cal Code Civ Proc § 425.16 (e). Here the statement made in Harris's Complaint constitutes constitutionally protected free speech, which should be subject to the Anti-SLAPP statute's two-prong test for determining whether an action constitutes prohibited SLAPP.

The first prong satisfied here requires the Court to decide "whether [there is] a threshold showing that the challenged cause of action is one arising from protected activity" meaning that it meets a category under Cal Code Civ Proc §

---

[4] To the extent that Peterson is specifically offended by the statement in Harris's Complaint that she markets herself as a cannabis entrepreneur yet holds not license in any state for the sale or distribution of cannabis – her remedy is not in asserting baseless tort claims against Harris, but instead to obtain licenses for the sale and/or distribution of cannabis, or not hold herself out to the public as a self-proclaimed "cannabis entrepreneur."

425.16 (e). *See Nevellier v. Sletten*, (2002) 29 Cal. 4th 82, 88. If the conduct at issue constitutes such "protected activity" then the Court moves to the second prong in order to determine "whether the plaintiff has demonstrated a probability of prevailing on the claim ." *See Id*; Cal. Code. Civ. P, 425.16(b)(1). When both prongs are satisfied, the Court should strike the claims in a Counter-Complaint that violate the protections offered by the Anti-SLAPP statute.

As set forth above, the first prong of the Anti-SLAPP analysis is satisfied because the conduct underlying Peterson's counterclaims – the single statement made in Harris's Complaint – constitutes constitutionally protected free speech. Further, the second prong of the Anti-SLAPP analysis is satisfied because Peterson cannot, under any circumstance, demonstrate the probability of prevailing on any one of her three counterclaims based on the statement made in Harris's Complaint because it is absolutely precluded by the litigation privilege, Cal. Civ. Code § 47(b), as discussed above.

Thus, all of the counterclaims set forth in Peterson's Counter-Complaint should be stricken pursuant to California's Anti-SLAPP statute, in addition to being barred by California's litigation privilege.[5]

### B. Peterson Cannot Assert A Cognizable Claim for IIED Based on Harris's June 6, 2025 Social Media Post.

In order to state a claim for intentional infliction of emotional distress, Peterson would have to allege facts demonstrating "extreme and outrageous conduct" by Harris taken "with the intention of causing, or reckless disregard of the probability of causing, emotional distress." *Hughes v. Pair* 46 Cal.4th 1035, 1050-1051

---

[5] Further, in order to discourage improper counterclaims like those asserted by Peterson, the Anti-SLAPP statute provides that if Harris prevails on the instant Motion, as he should, under California's Anti-SLAPP statute, he shall be entitled to an award of attorney's fees pursuant to Cal. Code Civ. P. § 425.16(c)(1).

(2009).

California courts have clarified that in order for conduct to be considered "extreme and outrageous" to support an IIED claim, it must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Osborn v. Irwin Mem'l Blood Bank,* 5 Cal. App. 4th 234, 286 (1992); *Hecimovich v. Encinal Sch. Parent Teacher Org.,* 203 Cal. App. 4th 450, 476 (2012)("conduct must be "outrageous, that is, beyond all bounds of reasonable decency."); *Christensen v. Superior Court*, 54 Cal. 3d 868, 904-05(IIED liability for "conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind."); *Fuentes v. Perez*, 66 Cal. App. 3d 163, 170 (1977) (IIED liability limited to conduct that "is outrageous or has gone beyond all reasonable bounds of decency.") Moreover, liability for IIED claims "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Hughes,* 46 Cal. 4th at 1051 (citing Rest.2d Torts, § 46, com.d.)  Harris's Instagram post with a message that "it's a beautiful day" followed by him advertising to his fans to come to his next comedy show, and posting a flyer advertising his show, is a far cry from "extreme and outrageous conduct" or any conduct that could plausibly cause "emotional distress" to *anyone*, let alone Peterson.

Further, California courts have found that the "extreme and outrageous conduct" that supports an IIED claim must be done in a plaintiff's presence or directed at her.  *See Christiansen* 54 Cal. 3d at 903; *McMahon v. Craig*, 176 Cal. App. 4th 1502, 1516 (2009); *Ess v. Eskaton Properties*, 97 Cal. App. 4th 120, 130 (2002).  Here the social media post does not reference (or "tag") or allude to Peterson in any way whatsoever. There is no plausible connection between the social media post and Peterson, and there is no plausible reason to suspect that Peterson would in any way be affected by a social media post by a celebrity

entertainer discussing the "beautiful day" and promoting his comedy show.

Finally, Peterson's characterization of this social media post as "a subliminal threat" specifically directed at her is simply a paranoid subjective opinion, which does not allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570). Because the "non-conclusory factual content, and reasonable inferences from that content" are <u>not</u> "plausibly suggestive of a claim entitling the plaintiff to relief," Peterson's counterclaim for intentional infliction of emotional distress should be dismissed. *Moss,* 572 F.3d at 969.

## IV.     CONCLUSION

For the reasons set forth herein, and in the Motion itself, the Second Counter-Complaint fails to sufficiently allege any facts to support any of the asserted counterclaims, and consequently should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Furthermore, the ***<u>dismissal of the counterclaims should be with prejudice</u>*** because neither (1) the allegation in Harris's initiating Complaint, nor (2) his social media post about "a beautiful day" could never serve as the basis for any cognizable claim. *See Karim-Panahi*, 839 F.2d at 623; *Jackson,* 353 F.3d at 758.

DATED: November 20, 2025           CAMERON BANKS LAW, A PROF. CORP.

                                    /s/ Indira J. Cameron-Banks
                                      Indira J. Cameron-Banks

                                    *Attorneys For* PLAINTIFF
                                      Clifford J. Harris