Keita T. Middleton (CA SBN 283813)
19744 Beach Blvd., #156
Huntington Beach, CA 92648
Email: kmiddleton@ktmlaw.us
(714) 797 -7671


Attorney for Defendant/Cross-Claimant,
Sabrina D. Peterson

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD J. HARRIS, Jr., an individual,<br><br>Plaintiff,<br><br>vs.<br><br><br>Defendant.<br>_____<br><br>SABRINA D. PETERSON, an individual<br><br>Counter Claimant,<br><br>vs.<br><br>CLIFFORD J. HARRIS, Jr., an individual,<br><br>Counter Defendant. | Case No:   2:24-cv-10781<br><br>**THIRD AMENDED COUNTER COMPLAINT OF COUNTER CLAIMANT SABRINA D. PETERSON [CORRECTED]**<br><br>**First Cause of Action**<br>Intentional Infliction of Emotional Distress<br><br>**Demand for Jury Trial** |

1

COMES NOW Counter Claimant, Sabrina D. Peterson ("Counter Claimant" or "PETERSON"), who brings this Third Amended Counter Complaint for Damages and Demand for Jury Trial, rested upon this Court's diversity jurisdiction, against Counter Defendant Clifford J. Harris, Jr., an individual ("Counter Defendant" or "MR. HARRIS") alleging, based upon information and belief, the following with respect to Counter Defendant's conduct:

## I.   NATURE OF THE CASE

1.  PETERSON first came into the presence of MR. HARRIS because PETERSON was a friend (of varying degrees over the years) with MR. HARRIS's wife, Tameka Harris ("MRS. HARRIS") between the years 2004 – 2021.

2.  The friendship between PETERSON and MRS. HARRIS started to become strained in or around March 2007 after a disagreement between PETERSON and MR. HARRIS, resulting in MR. HARRIS committing assault with a deadly weapon against PETERSON at a children's birthday party when he put a firearm to her head.  See attached hereto *Peterson Declaration*, page 3, ¶ 6.

3.  This event, which was very traumatic to PETERSON and is a profound source of anxiety, stress, sleeplessness, paranoia, fear, nervousness, unease, apprehension, tension, panic, dread, agitation, distress, angst, foreboding, trepidation and emotional anguish for her to this day, was the first of a series of events where MR. HARRIS threatened the safety and/or life of PETERSON.

4.  Several years later, in or around 2014, PETERSON encountered one of MR. HARRIS'S recording artist, who goes by the stage name Alphamega (who also crossed over as security or the "muscle" for MR. HARRIS and his record label), who told PETERSON that MR. HARRIS offered to pay him [Alphamega] between $15,000 - $25,000 to throw PETERSON off a building.  See *Peterson Declaration*, pages 4 – 5, ¶10.

5.  PETERSON was informed by another source that on another occasion MR. HARRIS was overheard weighing whether "handling" MS. PETERSON was an option.  See attached hereto *Declaration of Lakiesha Miles*, page 3, ¶ 7.

6.  After multiple attempts on or threats to PETERSON'S wellbeing, safety and life, PETERSON would hire security and eventually move out of Atlanta, Georgia.  See *Peterson*

2

**THIRD AMENDED COUNTER COMPLAINT OF COUNTER CLAIMANT SABRINA D. PETERSON [CORRECTED]**

*Declaration*, page 5, ¶11.

7. The ongoing conflict between PETERSON and MR. HARRIS would eventually play out publicly on social media in or around 2021 when PETERSON criticized MR. HARRIS's public support for then mayor of Atlanta, Keisha Lance Bottoms ("BOTTOMS"), who PETERSON did not support because PETERSON suspected BOTTOMS helped influence MR. HARRIS's approval for his Affordable Housing Loan for the community he was building in Atlanta when PETERSON believed that any public funds should be used to combat the rising crime rate in the Atlanta, Georgia area. PETERSON further stated that it was no wonder MR. HARRIS, and BOTTOMS were aligned since: a) BOTTOMS was not, as PETERSON believed, taking the necessary steps to combat the recent increased violent crimes against women in Atlanta (i.e., robbery, murder, rape, carjacking) and b) MR. HARRIS likes to pull guns to women's head. See *Peterson Declaration Id*.

8. In response to PETERSON publicly stating her disapproval of the alliance between MR. HARRIS and BOTTOMS, MRS. HARRIS made an Instagram post with a photograph of PETERSON's minor son and nephew alongside MR. HARRIS, which included a caption alluding to the idea that MR. HARRIS pulling a gun on PETERSON is inconsistent with the fact that PETERSON's son takes pictures with MR. HARRIS and calls him "uncle". However, up until this moment there was still some level of friendship left between PETERSON and MRS. HARRIS, and the posted photo depicting MR. HARRIS with PETERSON'S son and nephew was taken in efforts to keep the peace with the Harris family because in the past when PETERSON did not keep the peace it resulted in MR. HARRIS putting a gun to PETERSON'S head. PETERSON refused to give MR. HARRIS another opportunity to assault her with a deadly weapon ever again if she could help it, especially since she now is a mother.

9. This public dispute between PETERSON and MR. HARRIS and MRS. HARRIS triggered multiple individuals contacting PETERSON and sharing their own personal experience with MR. HARRIS and MRS. HARRIS where they also felt victimized. PETERSON shared these direct messages with her Instagram audience, while keeping the names of the individuals private.

10. PETERSON was subsequently contacted by a federal agent with Department of Homeland

**THIRD AMENDED COUNTER COMPLAINT OF COUNTER CLAIMANT SABRINA D. PETERSON [CORRECTED]**

Security, by the name of Antonio Bolfo, and thereafter disclosed on Instagram that MR. HARRIS was under federal investigation for sex trafficking.  This disclosure led to MR. HARRIS filing a complaint for damages against PETERSON for Defamation – Libel *Per Se*, Defamation – Libel *Per Quod*, Invasion of Privacy – False Light, Invasion of Privacy – Misappropriation of Name or Likeness.  In response, PETERSON filed a Counter Complaint, Amended Counter Complaint, Second Amended Counter Complaint and now this present Third Amended Counter Complaint for Intentional Infliction of Emotional Distress.

11. PETERSON is an advocate for women's rights, a fighter against femicide and any crime against a women or children and will always speak out against people who habitually commit crimes against vulnerable members of society.

12. PETERSON files this Third Amended Counter Complaint [corrected] in response to being assaulted, bullied, threatened, silenced and intimidated by MR. HARRIS, causing emotional distress, and is prepared to provide evidence and witnesses to support this Third Amended Counter Complaint.

## II. PARTIES

13. Counter Claimant PETERSON is an individual who is, and has been, since 2019, a resident of, and domiciled in, the State of California, with the intention of permanently residing within that state.

14. Counter Claimant is informed and believes, and on that basis alleges, that Counter Defendant MR. HARRIS is and always has been a resident of and domiciled in the State of Georgia.

## III. JURISDICTION AND VENUE

15. The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332 because there is complete diversity of the parties.  Counter Claimant PETERSON is domiciled in the State of California.  Counter Defendant HARRIS is domiciled in the State of Georgia.

16. Venue is appropriate in the Central District of California pursuant to 28 U.S.C. §1391(b)(3) as Counter Claimant resides in Los Angeles County where she suffered her alleged injuries due to Counter Defendant's conduct.

**THIRD AMENDED COUNTER COMPLAINT OF COUNTER CLAIMANT SABRINA D. PETERSON [CORRECTED]**

## IV. CAUSES OF ACTION FOR RELIEF

### FIRST CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

17. Counter Claimant incorporates by reference all allegations in the foregoing paragraphs of this Third Amended Counter Complaint as though fully set forth herein with the same force and effect as if such paragraphs were set forth fully at length here.

18. Counter Claimant suffered intentional infliction of emotional distress as a result of MR. HARRIS's actions against PETERSON spanning over a course of almost twenty (20) years between 2007 and 2026.

19. The first incident where PETERSON suffered intentional infliction of emotional distress caused by the outrageous and extreme conduct of MR. HARRIS stems from a series of events occurring in or around March 2007, after PETERSON publicly blamed MR. HARRIS for "MS. HARRIS'S (his then-girlfriend) miscarriage. PETERSON believed MR. HARRIS was the cause of MRS. HARRIS'S recent miscarriage due to him forcing MRS. HARRIS to take ecstasy pills and engage in constant sex escapades during her pregnancy, per the stories MRS. HARRIS shared with PETERSON during their years of friendship.  MR. HARRIS did not particularly approve of PETERSON involving herself in their personal affairs and forming an opinion on the situation.  Since MRS. HARRIS experienced this miscarriage around the same time as her oldest daughter's 12th or 13th birthday and had been in the hospital, PETERSON was tasked with planning, paying and making all the arrangements for MRS. HARRIS'S daughter's birthday party. After MR. HARRIS heard that PETERSON was blaming him for MRS. HARRIS's miscarriage, he tried to ban PETERSON from attending the birthday party.  However, as the person who financed the entire event PETERSON felt MR. HARRIS did not have the right to ban her from an event that she paid for.  A physical altercation ensued between PETERSON and MR. HARRIS's assistant and when the assistant called and told MR. HARRIS about it, he came with a gun 20 – 30 minutes later.  MR. HARRIS walked up to PETERSON and put a gun to her head in front of other witnesses, such as: a [now] sitting judge, a licensed attorney, MR. HARRIS's deceased sister, an ex-member of MRS. HARRIS's singing group, Xscape and multiple children.  See *Peterson*

**THIRD AMENDED COUNTER COMPLAINT OF COUNTER CLAIMANT SABRINA D. PETERSON [CORRECTED]**

*Declaration*, page 3-4, ¶ 6.

20. The second incident where PETERSON suffered intentional infliction of emotional distress caused by the outrageous and extreme conduct of MR. HARRIS occurred right after the birthday party incident when MR. HARRIS bragged about the incident and subliminally made threats to PETERSON in a song titled "Hurt" which was released in October 2007.  The lyrics are included with this pleading for reference, but some of the lyrics state "Ain't a damn thang change, I still keep that thang right up under my shirt, better tell them I ain't playin' Because it's all fun and games until somebody get hurt"…" I never get caught murkin' y'all 'cause it ain't what you do The question is, who saw? Shawty I'm way to raw? Catch me any day you want, you could think I'ma play if you want But the facts still remains, if I got an AK and you don't Well, then, playa, you gone Don't get me wrong, there's some niggas wanna kill me too But this ain't 'bout shit 'cause it's very well known where I'm at They can catch me in the booth right now if they really like that No, nigga let they hoe get 'em in the whole shit The .44 spit they holla, oh shit, protectin' her and you both hit You better check ya girl 'cause you be so sick…".  See attached hereto as **Exhibit "A"** *lyrics for record "Hurt" by T.I. and Busta Rhymes*.  This song was released as a threat to PETERSON and her then-boyfriend because after MR. HARRIS committed assault with a deadly weapon against PETERSON at a child's birthday party PETERSON'S boyfriend confronted MR. HARRIS about the incident.  See *Peterson Declaration*, page 4, ¶ 8.  This song is believed to be MR. HARRIS'S response to PETERSON and her boyfriend.

21. Another occasion where Mr. Harris has made a threat on PETERSON'S life is when one of MR. HARRIS'S artists with the stage name Alphamega (who also crossed over as security or the "muscle" for MR. HARRIS and his record label) saw PETERSON coming out of a restaurant on Peters Street in Atlanta one day in or around 2014, and he put PETERSON on notice that MR. HARRIS tried to pay him [Alphamega] between $15,000 - $25,000 to throw PETERSON, off a building.  He also shared with PETERSON how much MR. HARRIS hated PETERSON.  Since MR. HARRIS had directly threatened PETERSON'S life in the past when he put a gun to her head, MS. PETERSON believed this statement made by Alphamega to be true.  This was now the second

**THIRD AMENDED COUNTER COMPLAINT OF COUNTER CLAIMANT SABRINA D. PETERSON [CORRECTED]**

or third time MR. HARRIS made a threat to MS. PETERSON'S life.  See *Peterson Declaration*, page 5, ¶ 10.

22. After these multiple threats on PETERSON'S life, she had to hire personal security and eventually sold her home in Atlanta and moved to Los Angeles to be free from the dangerous environment that existed in Atlanta.  One of the reasons PETERSON moved out of Atlanta was to avoid any encounters with MR. HARRIS or any of his affiliates, in order to protect her life and the life of her son.  See *Peterson Declaration*, page 5, ¶ 11.

23. The next incident where PETERSON suffered intentional infliction of emotional distress caused by the outrageous and extreme conduct of MR. HARRIS occurred during the discovery period of this ongoing litigation between PETERSON and MR. HARRIS.  MR. HARRIS made a fourth threat on PETERSON'S life when he made a cryptic Instagram video post on July 6, 2025 where he was visibly agitated and made some statements which PETERSON knows to be a subliminal threat.  Specifically, MR. HARRIS stated, **"**Yeah, Man, I'm just out here…you know, it's a beautiful day to not be a buster…it's a beautiful day to mind your business … it's a beautiful day to not be negative…**don't take this day for granted**…don't be out here spreading propaganda just because you're unhappy with your life**…".**  This video was re-posted on another Instagram profile named "livebitez" where there were many comments directed towards PETERSON because many viewers believed the video was directed towards PETERSON.  See attached hereto as **Exhibit "B"** screen shots of the multiple comments directed towards Counter Claimant.  The video can be found on https://www.instagram.com/p/DLxqHgyP2-c/?igsh=NTc4MTIwNjQ2YQ==.  Under this video there are comments directed towards PETERSON, addressing PETERSON by her first name, Sabrina, so the average viewer understood this message to be directed towards the Counter Claimant.  PETERSON did not even know about this video until someone sent it to her.  No person in their right mind would publish on social media, or any public platform, an explicit statement that they want to kill or seriously injure someone, so of course MR. HARRIS did not explicitly say PETERSON'S name but PETERSON understandably understood it to be a threat on her life, especially when MR. HARRIS gave the instruction to not take the day for granted.  Since MR. HARRIS has already put a gun to

7

**THIRD AMENDED COUNTER COMPLAINT OF COUNTER CLAIMANT SABRINA D. PETERSON [CORRECTED]**

PETERSON'S head, offered someone money to push PETERSON off a building, recorded a song threatening PETERSON and her significant other, there should be little doubt that this was a clear message of intimidation and threats on PETERSON'S life.  The fact that MR. HARRIS said "**don't take this day for granted**" is a statement often synonymous with the idea that life is short and that tomorrow is not promised.  The fact that MR. HARRIS is alluding to a short life further confirms that these statements were a threat to PETERSON'S life or at the least her livelihood. MR. HARRIS has shown PETERSON since 2007 that it is his preference that PETERSON be silenced.  There is no conduct more extreme and outrageous than that which threatens someone's well-being or livelihood.  See *Peterson Declaration*, page 6, ¶ 16.

24. A subtle or cryptic message is enough to meet the extreme and outrageous threshold when it is part of a pattern of conduct or a single act that in the totality of circumstances is so egregious that it would shock the conscience.  Factors to consider are knowledge of the complainant's sensitivity, use of authority or power to inflict harm, repetition or escalation over time and context.

25. Here, MR. HARRIS knows that he previously held a gun to PETERSON'S head and that she would be sensitive about any future threats made by MR. HARRIS against PETERSON, including the July 2025 Instagram threat.  Also, MR. HARRIS has used his power and influence of popularity and superstar status to inflict harm on PETERSON when he threatened her with a cryptic message on Instagram.  There is a pattern or repetition of MR. HARRIS assaulting or threatening to assault PETERSON with violence when MR. HARRIS already put a firearm to PETERSON'S head once and offered someone to push her off a building on another occasion. MR. HARRIS'S delivery of the cryptic Instagram message was delivered while he and PETERSON were and continued to be engaged in a public legal battle with a long history of adversity with each other.  The Court should weigh the totality of circumstances in determining whether MR. HARRIS'S conduct was intentional or reckless and rose to the standard of extreme and outrageous conduct.

26. Further, during the discovery process for this present federal case PETERSON listed a witness, Lakiesha Miles, that PETERSON intends to call to testify at trial.  Counsel for MR. HARRIS noticed and conducted the deposition of Ms. Miles which was held back on April 13,

**THIRD AMENDED COUNTER COMPLAINT OF COUNTER CLAIMANT SABRINA D. PETERSON [CORRECTED]**

2026.  It was learned that less than one month after Ms. Miles's deposition was held, she received a threat via telephone essentially sending a warning to the witness.  See *Declaration of Lakiesha Miles*, page 5, ¶ 15.  So now, MR. HARRIS is not only threatening PETERSON, but he is also threatening the safety of PETERSON'S primary witness.

27. MR. HARRIS has a well-documented history involving serious federal firearms offenses and being affiliated in some way with multiple instances of gun violence.  Please see attached as **Exhibit "C"** *Deposition of Clifford Harris, Jr.* page 18.

28. Specifically, MR. HARRIS was convicted of unlawfully possessing machine guns and silencers and possession of firearms by a convicted felon in 2009.  Please see attached as **Exhibit "D"**, *United States Department of Justice Results of…Community Service Program…at Sentencing Hearing Report*.

*29.* Secondly, MR. HARRIS is the owner of Super Sound Studios (formerly Silent Sound Studios) Please see attached as **Exhibit "E"** *www.supersoundstudios.com* *"Our Story" page.*

30. Super Sound Studios has been the location of at least two (2) shootings since ownership has been taken over by MR. HARRIS.  Please see attached as **Exhibit "F"** *Atlanta Police Department Incident Report #221710195 and #260310377.*

31. Super/Silent Sound Studio has been in existence since 1996, having two previous owners before MR. HARRIS and was sold to MR. HARRIS in or around 2020.  Please see as **Exhibit "G"** *Bing search results for Super Sound Studios History*.

32. There had never been any instances of gun violence at Silent Sound Studios/Super Sound Studios in all of its existence until after it was purchased by MR. HARRIS.  Please see attached as **Exhibit "H"**, *Bing search results for history of shootings at Silent/Super Sound Studios*.

33. It is unusual for a place of business to have multiple occurrences of gun violence in a short period of time.

34. At trial, PETERSON will be presenting evidence to show that MR. HARRIS has a long history, leading up to present day, of threatening or committing assault with a deadly weapon against PETERSON, based on the above-described set of facts.  All of these instances of violence or threat of violence amount to extreme and outrageous conduct.

9

**THIRD AMENDED COUNTER COMPLAINT OF COUNTER CLAIMANT SABRINA D. PETERSON [CORRECTED]**

35. When MR. HARRIS put a firearm to PETERSON'S head, he engaged in extreme and outrageous behavior with intent or recklessness causing PETERSON to suffer from severe and emotional distress.

36. When MR. HARRIS recorded and released a song titled "Hurt" threatening PETERSON and her boyfriend with gun violence, he engaged in extreme and outrageous behavior with intent or recklessness causing PETERSON to suffer from severe and emotional distress.

37. When MR. HARRIS offered his artist/security to push PETERSON off of a building, he engaged in extreme and outrageous behavior with intent or recklessness causing PETERSON to suffer from severe and emotional distress.

38. When MR. HARRIS made an Instagram video sending a subtle or cryptic message advising not to take the day for granted he was sending a warning message and making yet another threat to PETERSON'S wellbeing and engaging in more extreme and outrageous behavior with intent or recklessness causing PETERSON to suffer from severe and emotional distress, when taking into account all of the prior instances of violence or threat of violence against PETERSON.

39. When PETERSON'S key witness received a threat just weeks after giving deposition testimony for the present case, it was a strong inclination that this was sent at the direction of MR. HARRIS and is evidence that he again has engaged in extreme and outrageous behavior with intent or recklessness in order to cause PETERSON to suffer from severe and emotional distress.

40. When determining whether conduct is extreme and outrageous, Courts look for conduct that shocks the conscience and goes beyond rudeness, insults or annoyances.  Here, all of MR. HARRIS'S conduct have included acts of violence or threats of violence which by nature shocks the conscience and undoubtedly goes beyond rudeness, insults or annoyances.

41. Thus, by engaging in patterns of violence and threats of violence against PETERSON over the course of almost 20 years, MR. HARRIS did engage in extreme and outrageous conduct, with intent or recklessness, causing severe emotional distress upon PETERSON.

42. MR. HARRIS'S acts of assaulting PETERSON with a deadly weapon, offering someone money to inflict severe emotional harm on PETERSON, sending a subliminal message to PETERSON via Instagram and indirectly sending threats to PETERSON'S key witness

10

**THIRD AMENDED COUNTER COMPLAINT OF COUNTER CLAIMANT SABRINA D. PETERSON [CORRECTED]**

collectively and by themselves are all extreme and outrageous, and with intent or recklessness that has caused Counter Claimant PETERSON emotional distress so severe that it could be expected to adversely affect PETERSON'S mental health and this conduct did in fact cause such distress in the form of anxiety, stress, sleeplessness, paranoia, fear, nervousness, unease, apprehension, tension, panic, dread, agitation, distress, angst, foreboding, trepidation and emotional anguish, depression, sleeplessness and a constant change in appetite.

## V. JURY TRIAL DEMAND

Counter Claimant hereby demands a jury trial to resolve each and every one of the causes of action against the Defendant.

## VI. PRAYER FOR RELIEF ON COUNTER COMPLAINT

WHEREFORE, Counterclaimant Sabrina D. Peterson respectfully prays that this Court enter judgment in her favor and against Counter Defendant Clifford J. Harris, Jr., according to proof, and award the following relief:

1. General damages for non-economic damages suffered by Counter Claimant, such as: compromise of proprietary interest, harm to reputation, emotional suffering, public humiliation, and economic harm in an amount according to proof at trial.

2. For punitive and exemplary damages to the extent provided by law.

3. Special damages for lost business opportunities, contracts, speaking engagements, and professional associations impacted by the tortious and retaliatory conduct.

4. Consequential damages for foreseeable losses caused by the extreme and outrageous conduct, including emotional and reputational harm impacting future earnings and relationships.

5. For declaratory and injunctive relief by restraining Counter-defendant(s) from further emotional distress against Counter Claimant.

6. For Counter Claimant's reasonable attorneys' fees to the extent provided by law.

7. For reasonable experts' fees.

8. For an award of prejudgment interest.

9. Reasonable costs and expenses of litigation, including filing fees and service costs;

///

---

11

**THIRD AMENDED COUNTER COMPLAINT OF COUNTER CLAIMANT SABRINA D. PETERSON [CORRECTED]**

10. Any additional relief the Court deems just, equitable, and proper under the circumstances.

DATED: June 1, 2026                                     Respectfully submitted,


                                                        _____/s/Keita T. Middleton_____
                                                        Keita T. Middleton
                                                        Attorney for Counter Claimant
                                                        SABRINA D. PETERSON

12
**THIRD AMENDED COUNTER COMPLAINT OF COUNTER CLAIMANT SABRINA D. PETERSON [CORRECTED]**